366 So.2d 752 (1978)
Ronald JACKSON, Appellant,
v.
STATE of Florida, Appellee.
No. 47269.
Supreme Court of Florida.
October 26, 1978.
*753 Jack J. Taffer of the Law Offices of Jack J. Taffer, Miami, for appellant.
Robert L. Shevin, Atty. Gen. and Carolyn M. Snurkowski, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
This is an appeal from a conviction of murder[1] in the first degree and a sentence of death. Jurisdiction vests pursuant to Article V, Section 3(b)(1), Florida Constitution. After careful review of the entire record we affirm the judgment and the sentence.
The death of the victim occurred during a robbery. On July 31, 1974, appellant and a companion, Willie Watts, approached an automobile parked in a downtown Miami parking lot and forced its occupants, Mr. Lamora and Mrs. Iturba, to give them their money and their jewelry. The couple was then forcibly transported from the scene of the robbery to a secluded area outside of town and directed to walk across a field toward a swamp. At this point Mr. Lamora attempted to subdue his captors and was shot. Somehow, he was able to escape into the woods, but Mrs. Iturba, who was also shot, could not get away. She was stuffed *754 into the trunk of her car and transported to another isolated area where her body was hidden beneath the brush and shrubs. An electrical cord was tied around her neck, causing suffocation, the primary cause of death.
Much of the prosecution's case was presented through statements made by the appellant while in the custody of the police. Appellant was arrested on August 1, 1974, at approximately 11:40 a.m. at a service plaza near Pompano, Florida, by an officer of the Florida Highway Patrol. At the time of his arrest appellant was immediately informed of his constitutional rights pursuant to the procedure outlined in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Detectives from Dade County arrived at the Pompano Plaza at 12:30 p.m. and Miranda warnings were again given. Appellant was then transported to the Dade County Jail where, for the third time, Miranda warnings were given and questioning commenced. Up to this time, Mrs. Iturba's body had not been found and appellant had not been charged with murder. (He had been arrested for the attempted murder of Mr. Lamora.) Sometime between his arrival at the Dade County Jail and 6:15 p.m., appellant described his activities in connection with the robberies and told the officers where Mrs. Iturba's body could be found. At approximately 7:15 p.m., after the corpse had been recovered, appellant was again informed of his Miranda rights and was placed under arrest for first degree murder. At this point appellant signed a written waiver stating that he understood and waived his Miranda rights. He then related facts concerning the shooting of both Iturba and Lamora, and the shooting of a gas station attendant in a robbery committed during appellant's attempt to leave the area. Before the taking of a formal written statement appellant was again told, "If you want an attorney to represent you at this time or any time during questioning you are entitled to such counsel. Do you understand that?" Appellant replied, "Yes, can I have one?" No counsel was furnished, and the questioning continued.
The trial judge determined that the formal written statement, taken after counsel was requested but before counsel was summoned, was inadmissible. All prior oral statements were admitted. To this, appellant objected. The test for determining the validity of a confession or statement is whether the statement was voluntarily and freely made after full Miranda warnings. Voluntariness need only appear by a preponderance of the evidence. See Wilson v. State, 304 So.2d 119 (Fla. 1974) and State v. Harris, 276 So.2d 845 (Fla. 4th DCA 1973). We think that the trial judge's determination that these statements were freely and voluntarily made was correct.
We have also reviewed the admission into evidence of two photographs of the victim and find these photographs relevant and therefore properly admitted. Alford v. State, 307 So.2d 433 (Fla. 1975); Bauldree v. State, 284 So.2d 196 (Fla. 1973); and State v. Wright, 265 So.2d 361 (Fla. 1972).
Appellant next contends that the striking of nine prospective jurors, all opposed to the death penalty, deprived him of his constitutional right to a jury composed of a cross section of the community. The record clearly shows that these jurors expressed more than mere opposition. Of the nine prospective jurors, three stated unequivocally that they would not vote "guilty of first degree murder" for fear the appellant would be executed. One said he would not vote "guilty" of first degree murder "[i]f I had any doubt in my mind they are going to kill [appellant]." For religious, moral, or unstated reasons, four other jurors said they would vote to recommend death in no circumstances. The ninth juror responded to the questions of the court and counsel in such a manner that the only conclusion that can be drawn is that she *755 would vote against death regardless of the facts presented or the instructions given.[2]
This issue is governed by Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), wherein the Supreme Court stated at page 522, 88 S.Ct. at page 1777:
We repeat, however, that nothing we say today bears upon the power of a State to execute a defendant sentenced to death by a jury from which the only veniremen who were in fact excluded for cause were those who made unmistakably clear (1) that they would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's guilt.
We find that the trial judge followed the dictates of Witherspoon, supra, and properly excused the jurors. See also Williams v. State, 228 So.2d 377 (Fla. 1969) and Portee v. State, 253 So.2d 866 (Fla. 1971).
Prior to sentencing, the trial judge ordered that a presentence investigation report be prepared in connection with the robbery and assault charges. He did not order a PSI in connection with the murder charge. Appellant, a first felony offender, contends that Fla.R.Crim.P. 3.710[3] requires a trial judge to order a presentence investigation report in all cases where a defendant has not previously been convicted of a felony. This point must be decided against the appellant on authority of this court's recent opinion in Hargrave v. State, 366 So.2d 1 (Fla. 1978). In that case we held that once a jury returns a verdict of first degree murder, the trial judge is exempt from the *756 mandatory presentence requirements of the rule.
Finally, we must determine whether or not appellant was appropriately sentenced. § 921.141(4), F.S. (1975).
The trial judge made the following findings of fact:
THIS CAUSE came before the Court for trial by jury and after deliberations a verdict was rendered finding the defendant guilty of Murder in the First Degree, two counts of Robbery, and Assault With Intent to Commit Murder in the First Degree. Thereafter, the defendant was adjudicated guilty by the Court and the jury, after hearing additional matters, retired to consider an advisory sentence, pursuant to Florida Statute 921.141(2). The jury returned, and in open Court recommended that this Court impose the death penalty upon the defendant.
This Court independent of, but in agreement with, the advisory sentence rendered by the jury does hereby impose the death penalty upon the defendant, RONALD JACKSON, and in support thereof, as required by 921.141(3), submits this, its written findings upon which the sentence of death is based.
These findings are as follows:
1. That sufficient aggravating circumstances exist in this particular case that far outweigh any mitigating circumstances in the record. The death of this decedent occurred while the defendant was engaged in the commission of the crime of Armed Robbery. In addition thereto, the defendant clearly committed the capital felony in order to eliminate the victim of the robbery. He forcibly transported the victim against her will, from the scene of the robbery to a lonely desolate area to accomplish the capital felony. These facts alone, in this Court's judgment could justify the imposition of the death penalty, but this particular killing is far more useless and heinous than this.
2. The Court finds that the capital felony committed in this case was especially heinous, atrocious and cruel. The Supreme Court of Florida in consideration of the legalities of the recently enacted death sentence in the State of Florida, decreed that these terms were to receive their common connotations and decreed that "heinous" meant "extremely wicked or shockingly evil", "atrocious" meant "outrageously wicked and vile" and "cruel" meant "a design to inflict a high degree of pain with utter indifference to or even enjoyment of the suffering of others". See Dixon v. State, 283 So.2d 1, pg. 9, Florida Supreme Court, 1973. The facts of this case indicate the full meaning of "heinous, atrocious and cruel". The victim of the robbery and murder was eight months pregnant. The fetus died because of the defendant's actions. The victim was led across a wet field to a swamp. There she observed her friend shot in the arm by the defendant, who then turned the gun on her and shot her in the head. The obvious intention of the defendant, in this Court's opinion, was to eliminate and execute the witnesses to the robbery. However, one of the victims escaped, after having been shot a second time. The murdered victim was literally stuffed into the trunk of her own car and transported to another isolated area of the County and her body hidden under thick brush and left. An electrical cord was tied around the victim's neck, causing suffocation, the primary cause of death. In this condition, she and the fetus were left to die. Her body was located sometime later. The facts of this case are the most "heinous, atrocious and cruel" that this Court has ever considered. It is for crimes like the one at Bar that the death penalty is in fact appropriate. See Sullivan v. State, 303 So.2d 632 (Fla. 1974).
3. This Court has observed the demeanor and the action of the defendant throughout this entire trial and has not observed any sign of remorse, indicating full well to this Court that the death penalty is the proper selection of *757 the punishment to be imposed in this particular case.
The Court is not unmindful of the fact that the defendant is but 18 years of age and is further not unmindful of the fact that this is the defendant's first conviction. However, aggravating circumstances in this case purely outweigh beyond and to the exclusion of every reasonable doubt, in the Court's mind, the mitigating circumstances.
In addition to the above enumerated matters of mitigation, it was urged by counsel for the defendant that he was under the domination of the co-defendant, yet to be tried, in this case. The Court finds this contention to be inconsistent with the evidence. The psychological determination subsequently made does not rebut the direct testimony of the other victim, who testified as to the role the defendant played in the commission of the crime. This Court finds, as a matter of fact, the defendant was the dominating factor and not the dominated. Counsel for the defendant further urged that the defendant did not appreciate the criminality of his act. The facts are inconsistent with this contention also. The obvious elimination of witnesses to a crime is conclusive proof that one is knowledgable of the criminality of his conduct, in this Court's opinion.
Counsel for the defendant further contended that the ability of the defendant to conform his conduct to the requirements of the law was substantially impaired. Testimony was offered through two psychologists and a psychiatrist that the defendant possessed left hemispheric brain damage. This was caused by voluntary inhalation or sniffing of glue and transmission fluid. These doctors, however, testified that the defendant possessed no psychosis and knew right from wrong. There was no contention or urging that the defendant was criminally insane but merely that he was unable to conform to the requirements of law. This Court fails to recognize a voluntary induced condition caused by drug, glue or transmission sniffing as an excuse for the supreme punishment in this heinous crime.
This Court is convinced that the defendant knew the criminality of his acts and that his ability to perform was not impaired. The defendant knew exactly what he wanted to do: rob the victim and then kill her.
The aggravating circumstances in this case purely outweigh beyond and to the exclusion of every reasonable doubt in the Court's mind the mitigating circumstances. This Court does impose the death penalty on the defendant, RONALD JACKSON.
Appellant contends that the trial judge erred in failing to find as a mitigating circumstance the fact that he acted under the dominating influence of Watts. We disagree. The trial judge specifically found that the "psychological determination subsequently made does not rebut the direct testimony of the other victim, who testified as to the role the defendant played in the commission of the crime. This court finds, as a matter of fact, the defendant was the dominating factor and not the dominated." It was the responsibility of the judge and the jury to weigh the evidence and resolve any conflicts. They did so. We will not now substitute our opinion for theirs.
Finally, appellant directs our attention to the fact that immediately after he was sentenced, his accomplice, Willie Watts, pleaded guilty to the first degree murder of Isaura Iturba and was sentenced to life imprisonment. We recognize and again reiterate our holding in Slater v. State, 316 So.2d 539 (Fla. 1975) at 542, that "defendants should not be treated differently upon the same or similar facts." In this case, however, the facts are not the same. The trial judge who sentenced both defendants specifically found that Jackson was "the dominating factor and not the dominated." Under our present statutory scheme, the presence of this additional mitigating circumstance justifies the unequal sentences imposed on these defendants. Section 921.141(6)(e).
*758 We find that the aggravating factors outweigh those in mitigation and that the sentence of death is therefore appropriate.
Accordingly, the judgment and sentence are affirmed.
It is so ordered.
ENGLAND, C.J., and ADKINS, OVERTON, SUNDBERG and HATCHETT, JJ., concur.
BOYD, J., concurs in part and dissents in part with an opinion.
BOYD, Justice, concurring in part and dissenting in part.
I concur in that portion of the majority opinion finding defendant guilty of murder in the first degree.
I respectfully dissent to that portion of the opinion denying appellant a presentence investigation. I construe Rule 3.710, Fla.R. Crim.P., to require a presentence investigation report to be made prior to the imposition of sentence whenever that person is under the age of eighteen years or when convicted of a first felony. I find nothing in the rule providing that it shall be inapplicable in capital cases. The argument used to deny presentence investigations to those persons convicted of capital crimes is that mitigating circumstances may be presented by the defendant to the jury and court whenever the sentencing hearings are held. Indigent persons convicted of crime may find it extremely difficult to develop proof of such mitigating circumstances without the services rendered by the state in preparing presentence investigations. It seems inherently unfair and borders upon denial of constitutional equal protection to grant presentence investigation hearings to persons convicted of less serious crimes and deny hearings to those possibly facing execution.
NOTES
[1] Other offenses charged were robbery and assault with intent to commit murder.
[2] MR. McWILLIAMS: ...

Do you think that there could be extreme circumstances under which you could consider the death penalty as an appropriate sentence?
MS. MEAGHER: I don't really think so.
MR. McWILLIAMS: What I'm trying to find out is if you are totally closed minded on that issue or whether you could consider it. There's many, many different facts and circumstances in each particular case. So, this allows you leeway if you think there would be some circumstances so terrible that only under those circumstances you could consider the death penalty, then you'd have an open mind towards it at least.
If you think you don't care how bad it is, what the circumstances, there's no possible way  all I'm trying to do is find out what is your category.
MS. MEAGHER: I'm trying to think. I really think I don't believe in the death penalty.
MR. McWILLIAMS: Do you think there are no circumstances under which you could vote for the death penalty?
MS. MEAGHER: I think it should be life imprisonment.
MR. McWILLIAMS: Well than, are you totally closed to even the consideration of the death penalty?
MS. MEAGHER: Yes.
* * * * * *
MR. VON ZAMFT: Now, what we need to know is if you would consider the death penalty at all. In other words, are you so against the death penalty, are your feelings so strong you would not even consider it at all as an alternative sentence?
MS. MEAGHER: I think so.
MR. VON ZAMFT: You think so. You're not sure.
You have never been in the position, right, I know we're asking people questions about what they would do in hypothetical situations that nobody has ever been in before. We have to do it that way, even though it's in a situation, so you say you don't know. I would consider it, but you're not sure.
MS. MEAGHER: I'm pretty sure.
MR. VON ZAMFT: Okay.
THE COURT: Ma'am, let the Court inquire.
Is it your answer that you would not consider it or that you could consider it, or that you might consider it?
MS. MEAGHER: I don't think that I would.
THE COURT: You think you would not?
MS. MEAGHER: Yes.
THE COURT: And I glean from that you could not.
MS. MEAGHER: Right.
[3] Rule 3.710. Presentence Report

In all cases in which the court has discretion as to what sentence may be imposed, the court may refer the case to the probation and parole commission for investigation and recommendation. No sentence or sentences other than probation shall be imposed on any defendant found guilty of a first felony offense or found guilty of a felony while under the age of 18 years, until after such investigation has first been made and the recommendations of the commission received and considered by the sentencing judge.