**Ronald JACKSON, Petitioner–Appellant,**

v.

**Richard L. DUGGER, As Secretary, Department of Corrections, State of Florida, Respondent–Appellee.**

No. 86–5630.

United States Court of Appeals, Eleventh Circuit.

Feb. 1, 1988.

Rehearing and Rehearing En Banc Denied March 7, 1988.

---

Bennett H. Brummer, Public Defender, Karen M. Gottlieb, Asst. Public Defender, Eleventh Judicial Circuit of Florida, Miami, Fla., for petitioner-appellant.

Jim Smith, Atty. Gen., Carolyn Snurkowski, Richard E. Doran, Debora J. Turner, Asst. Attys. Gen., Dept. of Legal Affairs, Miami, Fla., for respondent-appellee.

Before RONEY, Chief Judge, HILL and KRAVITCH, Circuit Judges.

HILL, Circuit Judge:

Petitioner Ronald Jackson was convicted of first degree murder and sentenced to death by the Circuit Court of Dade County Florida. This sentence was upheld by the Florida Supreme Court on direct appeal. *Jackson v. State*, 366 So.2d 752 (Fla.1978), *cert. denied,* 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979). A state collateral attack also proved unsuccessful. *Jackson v. Wainwright,* 421 So.2d 1385 (Fla.1982), *cert. denied,* 463 U.S. 1229, 103 S.Ct. 3572, 77 L.Ed.2d 1412 (1983). Jackson brought this federal habeas proceeding challenging his conviction and sentence of death. His federal habeas petition raises one ground concerning his conviction (*Miranda* claim) and numerous arguments attacking his sentence of death. The United States District Court for the Southern District of Florida rejected Jackson's claims in toto and denied habeas relief. We agree with the district court that no constitutional error occurred with regard to the guilt/innocence phase of Jackson's conviction. At Jackson's sentencing hearing, the trial judge erred by instructing the jury that death is presumed to be the appropriate sentence. Accordingly, we reverse the district court in part and direct the district court to grant the writ as to Jackson's sentence of death.

The circumstances of the murder upon which Jackson's conviction is based were adequately summarized by the Florida Supreme Court:

The death of the victim occurred during a robbery. On July 31, 1974, appellant and a companion, Willie Watts, approached an automobile parked in a downtown Miami parking lot and forced its occupants, Mr. Lamora and Mrs. Iturba, to give them their money and jewelry. The couple was then forcibly transported from the scene of the robbery to a secluded area outside of town and directed to walk across a field toward a swamp. At this point Mr. Lamora attempted to subdue his captors and was shot. Somehow, he was able to escape into the woods, but Mrs. Iturba, who was also shot, could not get away. She was stuffed into the trunk of the car and transported to another isolated area where her body was hidden beneath the brush and shrubs. An electrical cord was tied around her neck, causing suffocation, the primary cause of death.

*Jackson v. State,* 366 So.2d 752, 753–54 (Fla.1978), *cert. denied,* 444 U.S. 885, 100

S.Ct. 177, 62 L.Ed.2d 115 (1979). The victim was eight months pregnant at her death. The jury recommended a sentence of death which was accepted by the trial judge.

At trial, the state introduced a confession given by Jackson. Although Jackson was repeatedly informed of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), appellant contends that police officers, by resuming questioning, failed to scrupulously honor Jackson's invocation of his right to remain silent in violation of *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

Jackson was arrested by the Florida Highway Patrol at 11:39 a.m. on August 1, 1974, and invoked his right to remain silent after being given his *Miranda* warnings. Dade County officials again advised Jackson of his rights five additional times in the course of six hours. After making an oral statement, Jackson, at 6:15 p.m., described the location of the victim's body. Jackson then indicated that he desired counsel. Investigators, however, failed to provide Jackson with counsel. Jackson proceeded to give a formal written confession. The state trial court concluded that the formal written confession was inadmissible; the trial court allowed all statements made prior to Jackson's request for counsel.

The federal district court rejected Jackson's claim of a *Miranda* violation:

A review of the circumstances leading to Petitioner Ronald Jackson's oral statements reveals that the right to remain silent was scrupulously honored in this case. Upon Petitioner's arrest, he was advised of his right to remain silent pursuant to *Miranda v. Arizona....* When Petitioner stated that he did not want to talk, Trooper McCall immediately ceased the interrogation and did not try to either resume the questioning or in any way to persuade Petitioner to reconsider his position. After forty-five minutes to an hour, Detective Ojeda from Dade County arrived at the Pompano Plaza in Broward County, the place of arrest, and advised Petitioner of his rights. Petitioner again asserted his right to remain silent. The Petitioner was not interrogated. The Dade County officer's act of informing Petitioner of his rights, which was unaccompanied by interrogation, did not undercut Petitioner's previous decision not to answer the State Trooper's inquiries.

After an interval of three to four hours, Petitioner was again given full and complete *Miranda* warnings. Petitioner was thus reminded that he could remain silent and could consult with a lawyer. It was at this point, after receiving *Miranda* warnings for a third time, that the Petitioner was subjected to interrogation for a second time. This subsequent questioning, which occurred in Dade County, did not violate Petitioner's right to cut off questioning which had been invoked in response to police inquiries in Broward County. Nothing in the record indicates that the police failed to honor Petitioner's decision to cut off questioning, either by refusing to cease interrogation upon request or by persisting in repeated efforts to wear down Petitioner's resistance to talking. In fact, the record here reflects that upon Petitioner's assertion of the right to cut off questioning, the police immediately ceased the interrogation and resumed questioning only after a significant period of time and the provisions of a fresh set of *Miranda* warnings.

We agree with the district court that Jackson's right to remain silent was scrupulously honored.

The state contends that Jackson's *Miranda* claim is procedurally barred. The Florida Supreme Court, however, clearly rejected the merits of Jackson's constitutional claim without reliance upon procedural default. *Jackson v. State,* 366 So.2d at 754; *Jackson v. Wainwright,* 421 So.2d at 1387. Thus, procedural default is inapplicable. *See Campbell v. Wainwright,* 738 F.2d 1573, 1576–77 (11th Cir.1984), *cert. denied,* 475 U.S. 1126, 106 S.Ct. 1652, 90 L.Ed.2d 195 (1986). The basis of Jackson's claim rests upon the Supreme Court's decision in *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). In *Mosley,* the Supreme Court made clear that

police, in appropriate circumstances, may properly resume questioning a defendant after he has invoked his right to remain silent:

> [A] blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests. Clearly, therefore, neither this passage nor any other passage in the *Miranda* opinion can sensibly be read to create a per se proscription of indefinite duration upon any further questioning by any police officer on any subject, once the person in custody has indicated a desire to remain silent.

*Id.* at 102–103, 96 S.Ct. at 325–326. The standard set forth by *Mosley* requires that a defendant's *Miranda* rights be "scrupulously honored." Jackson claims that the investigating officers failed to so honor his rights.

In *United States v. Hernandez,* 574 F.2d 1362, 1368 (5th Cir.1978), this circuit recognized the coercive effect of giving repeated *Miranda* warnings in response to a defendant's invocation of his right to remain silent. *Hernandez,* makes it clear, however, that whether a suspect's right to cut off questioning was scrupulously honored requires a case by case analysis. In *United States v. Corral–Martinez,* 592 F.2d 263, 267 (5th Cir.1979), the court pointed out the egregious nature of the facts in *Hernandez:*

> In [*Hernandez*] the appellant first received *Miranda* warnings immediately upon arrest. He was then confined in the close quarters of a police wagon for nearly five hours, though the police station was only minutes away. Upon his 5 a.m. arrival at the station he was again read his rights in the midst of attempts to elicit conversation and to secure his cooperation in return for favorable probation reports. Though the appellant had explicitly refused to speak and may have even requested an attorney, the po-

lice began another round of questioning fifteen minutes later, following new warnings. It was either during this session or another one some 30 minutes later that the appellant made the incriminating statements which we ruled must be suppressed because his "right to cut off questioning" had not been "scrupulously honored."

The court in *Corral–Martinez* proceeded to hold that police had scrupulously honored the defendant's right to remain silent, despite the successive administration of *Miranda* warnings during a 4½ hour time period. *See also United States v. Udey,* 748 F.2d 1231 (8th Cir.1984) (*Miranda* warnings given three times within 6 hours of arrest, upon fourth interrogation 48 hours after arrest confession attained; confession held admissible), *cert. denied,* 472 U.S. 1017, 105 S.Ct. 3477, 87 L.Ed.2d 613 (1985). By contrast this court in *Christopher v. State of Florida,* 824 F.2d 836 (11th Cir.1987) found that continued interrogation, without an intervening lapse of time following the suspect's invocation of his right to cut off questioning rendered the confession inadmissible.

■ The record in this case clearly indicates that the defendant's rights under *Miranda* were scrupulously honored. On each occasion when Jackson invoked his right to remain silent, police immediately cut off any questioning. Furthermore, a significant period of time (over six hours) elapsed between Jackson's original invocation of his right to remain silent and the time of his confession. Significantly, Jackson does not allege that the conduct of police was such as to overbear the defendant's will, rather Jackson relies totally upon the number of times police gave him *Miranda* warnings. The record reflects nothing more than diligence on behalf of the police to assure that Jackson was fully informed of his rights as he was being processed upon arrest. Accordingly, we find no constitutional error. We proceed to consider Jackson's claim that the sentencing phase of his trial was tainted by constitutional error.

The Florida Supreme Court, sitting as an appellate body, has consistently stated that it will presume a sentence of death to be appropriate when one or more valid aggravating factors exists, even if other aggravating factors relied upon by the sentencer are found to be improper. *See, e.g., White v. State,* 446 So.2d 1031, 1037 (Fla. 1984) ("When there are one or more valid aggravating factors which support a death sentence, in the absence of any mitigating factors, death is presumed to be the appropriate penalty."). In the present case, the terminology that death is presumed appropriate seeped into the sentencing instructions given by the trial judge. The jury was instructed:

> When one or more of the aggravating circumstances is found, death is presumed to be the proper sentence unless it or they are overridden by one or more of the mitigating circumstances provided.

Jackson contends that such an instruction amounts to a constitutional error. We agree.

It is true that in *Ford v. Strickland,* 696 F.2d 804 (11th Cir.) (en banc), *cert. denied,* 464 U.S. 865, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983), this court upheld the Florida Supreme Court's practice of not requiring resentencing even after the Court determined that some aggravating circumstances found by the jury lacked evidentiary support. As we explained, the Florida Supreme Court's "presumption" that a death sentence should be affirmed due to the existence of five aggravating circumstances and no mitigating circumstances "seems very like the application of a harmless error rule." *Id.* at 815.

In this case, however, the *jury* was instructed that death was presumed to be the appropriate penalty. Justice McDonald of the Florida Supreme Court has astutely pointed out the problems created when such a presumption is relied upon by the sentencing authority:

> I would also like to comment on the reference in the majority opinion to *State v. Dixon,* 283 So.2d 1 (Fla.1973), *cert. denied,* 416 U.S. 943 [94 S.Ct. 1950, 40 L.Ed.2d 295] (1974). I do not embrace the language from that opinion recited in this majority opinion as "when one or more of the aggravating circumstances is found death is presumed to be the proper sentence unless it or they are overridden by one or more of the mitigating circumstances." If that language is restricted to the role of this Court in reviewing death sentences imposed by the trial court, it is acceptable. But I fear that it is construed by the trial judges as a directive to impose the death penalty if an aggravating factor exists that is not clearly overridden by a statutory mitigating factor. The death sentence is proper in many cases. But it is the most severe and final penalty of all and should, in my judgment, be exercised with extreme care. I am unwilling to say that a trial judge should presume death to be the proper sentence simply because a statutory aggravating factor exists that has not been overcome by a mitigating factor.

*Randolph v. State,* No. 54–869 (Fla. Nov. 10, 1983) (LEXIS, States library, Fla. file) (McDonald, J., dissenting), *withdrawn,* 463 So.2d 186 (Fla.1984), *cert. denied,* 473 U.S. 907, 105 S.Ct. 3533, 87 L.Ed.2d 656 (1985).

Such a presumption, if employed at the level of the sentencer, vitiates the individualized sentencing determination required by the Eighth Amendment. The Supreme Court has "emphasized repeatedly ... [that] it is essential that the capital-sentencing decision allows for consideration of whatever mitigating circumstances may be relevant to either the particular offender or the particular offense." *Roberts v. Louisiana,* 431 U.S. 633, 637, 97 S.Ct. 1993, 1995, 52 L.Ed.2d 637 (1977) (per curiam). The question is whether a sentencing procedure " 'create[d] the risk that the death penalty w[ould] be imposed in spite of factors which may call for a less severe penalty.' " *Sumner v. Shuman,* —— U.S. ——, 107 S.Ct. 2716, 2726, 97 L.Ed.2d 56 (1987) (quoting *Lockett v. Ohio,* 438 U.S. 586, 608, 98 S.Ct. 2954, 2966, 57 L.Ed.2d 973 (1978) (plurality opinion)); *see also Peek v. Kemp,* 784 F.2d 1479, 1488 (11th Cir.1986) (en banc) (criticizing jury instruction in *Spivey v. Zant,* 661 F.2d 464 (5th Cir. Unit B Nov. 1961), *cert. denied,* 458 U.S. 1111, 102 S.Ct.

3495, 73 L.Ed.2d 1374 (1982), because that instruction "may well have skewed the jury towards death and misled the jury with respect to its absolute discretion to grant mercy regardless of the existence of 'aggravating' evidence"). The jury instruction in this case created precisely that risk.

Presumptions in the context of criminal proceedings have traditionally been viewed as constitutionally suspect. *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). When such a presumption is employed in sentencing instructions given in a capital case, the risk of infecting the jury's determination is magnified. An instruction that death is presumed to be the appropriate sentence tilts the scales by which the jury is to balance aggravating and mitigating circumstances in favor of the state.

It is now clear that the state cannot restrict the mitigating evidence to be considered by the sentencing authority. *Hitchcock v. Dugger,* —— U.S. ——, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987); *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). In considering the constitutionality of Florida's capital sentencing scheme, the Supreme Court unambiguously declared:

> While the various factors to be considered by the sentencing authorities do not have numerical weights assigned to them, the requirements of *Furman* are satisfied when the sentencing authority's discretion is guided and channeled by requiring examination of specific factors that argue in favor of or against imposition of the death penalty, thus eliminating total arbitrariness and capriciousness in its imposition.
>
> The directions given to judge and jury by the Florida statute are sufficiently clear and precise to enable various aggravating circumstances to be weighed against the mitigating ones. As a result, the trial court's sentencing discretion is guided and channeled by a system that focuses on the circumstances of each individual homicide and individual defendant in deciding whether the death penalty is to be imposed.

*Proffitt v. Florida,* 428 U.S. 242, 258, 96 S.Ct. 2960, 2969, 49 L.Ed.2d 913 (1976). Rather than follow Florida's scheme of balancing aggravating and mitigating circumstances as described in *Proffitt,* the trial judge instructed the jury in such a manner as virtually to assure a sentence of death. A mandatory death penalty is constitutionally impermissible. *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); *see also State v. Watson,* 423 So.2d 1130 (La.1982) (instructions which informed jury that they must return recommendation of death upon finding aggravating circumstances held unconstitutional). Similarly, the instruction given is so skewed in favor of death that it fails to channel the jury's sentencing discretion appropriately. *Cf. Gregg v. Georgia,* 428 U.S. 153, 189, 96 S.Ct. 2909, 2932, 49 L.Ed. 2d 859 (1976) (sentencing authority's discretion must "be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action"). In light of our disposition of this issue, we need not consider Jackson's other claims regarding his sentence. Accordingly, we reverse the judgment of the district court and remand with directions that the writ shall be granted in part, conditioned upon the state's right to conduct a new sentencing hearing.

AFFIRMED in part, REVERSED in part, and REMANDED.