[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 31, 2006
THOMAS K. KAHN
CLERK

No. 05-14730
Non-Argument Calendar

_____

D. C. Docket No. 04-00260-CR-CB

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HASHIM SAYID MUHAMMAD,
a.k.a. Booshaker,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(October 31, 2006)**

Before BIRCH, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Appellant Hashim Sayid Muhammad challenges his conviction for

possessing a stolen firearm in violation of 18 U.S.C. § 922(j).  Muhammad argues

that the district court erred in denying his motion to suppress statements that he

made after invoking his right to remain silent under Miranda.[1]  We AFFIRM.

## I .  BACKGROUND

In July 2003, Inspectors of the United States Postal Service and members of

the Mobile, Alabama police department executed a search warrant at Muhammad's

home.  The officers had been investigating the recent robbery of a Post Office in

Mobile, and suspected Muhammad's involvement.  The police handcuffed

Muhammad while they searched his dwelling.  Upon being placed into custody,

Postal Inspector Mike Willis informed Muhammad of his Miranda rights.  He

indicated that he understood those rights.

While the search of the home was being carried out, the police transported

Muhammad to the Postal Inspector's office in Mobile for further questioning.

Muhammad was then left alone in an interrogation room with Inspector Willis,

who began questioning him about the robbery.  During the hour-long interrogation,

Muhammad became very agitated over being accused of robbing the Post Office.

In the course of the interrogation, Inspector Willis was interrupted by a

colleague, who informed him that a handgun found at Muhammad's home had

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).

2

been reported as stolen.  When Inspector Willis asked Muhammad about the allegedly stolen gun, Muhammad denied that it had been stolen.  Expressing his increasing anger at the questions being asked, Muhammad then stated, according to Inspector Willis' later testimony, that "he didn't want to talk to [Inspector Willis] anymore."  R4 at 8.  At that point, Inspector Willis ceased the interrogation.

Upon terminating the formal interrogation, Inspector Willis then began asking Muhammad for his personal biographical information in order to complete Muhammad's paperwork.  Despite Muhammad's earlier protestations that he did not want to answer any more questions, however, Muhammad continued to make voluntary statements pertaining to the criminal investigation.  Inspector Willis later speculated that Muhammad was "very agitated about having been accused of committing a robbery," and that, as a result, "he said he didn't want to talk, but then he talked and talked and [kept] talking."  Id. at 9.  Faced with Muhammad's continued comments about the robbery, Inspector Willis then asked Muhammad: "[D]o you want to talk about this or not?  Because you don't have to."  Id. at 10.  After Muhammad unequivocally stated that he wanted to continue the discussion, the interrogation continued.  No additional Miranda warnings were given.  Muhammad proceeded to make a series of inconsistent and inculpatory statements concerning his ownership of the handgun.

3

Muhammad was subsequently indicted in the Southern District of Alabama for one count of possession of a stolen firearm, in violation of 18 U.S.C. § 922(j). Prior to trial, Muhammad, through counsel, filed a motion to suppress the statements that he had made to Inspector Willis. Muhammad contended that the government had engaged in formal interrogation after he had invoked his right to remain silent, and that such questioning violated his constitutional rights as set forth in <u>Miranda</u> and its progeny. After conducting a hearing on Muhammad's motion, the district court concluded that Muhammad's right to remain silent had been scrupulously honored by the police until Muhammad himself had re-initiated the dialogue and waived his right to remain silent. Based on that determination, the district denied the motion to suppress.

Muhammad's statements were subsequently admitted at his trial. Following a one day jury trial, he was convicted of being in possession of a stolen firearm under 18 U.S.C. § 922(j), and was sentenced to 21 months of imprisonment. This appeal followed.

## II. DISCUSSION

On appeal, Muhammad contends that the district court erred in denying his motion to suppress the inconsistent and inculpatory statements that he made to Inspector Willis after invoking his right to remain silent. We review a district

4

court's denial of a motion to suppress under a mixed standard of review, reviewing the district court's findings of fact under the clearly erroneous standard and the district court's application of law to those facts de novo.  United States v. Gil, 204 F.3d 1347, 1350 (11th Cir. 2000) (per curiam).  "When considering a ruling on a motion to suppress, all facts are construed in a light most favorable to the successful party."  United States v. Behety, 32 F.3d 503, 510 (11th Cir. 1994).

In Miranda v. Arizona, the Supreme Court made clear that "unless law enforcement officers give certain specified warnings before questioning a person in custody, and follow certain specified procedures during the course of any subsequent interrogation, any statement made by the person in custody cannot over his objection be admitted in evidence against him as a defendant at trial, even though the statement may be in fact wholly voluntary."  Michigan v. Moseley, 423 U.S. 96, 99-100, 96 S. Ct. 321, 324-25 (1975) (footnote omitted).  Among the safeguards enumerated in Miranda was a defendant's Fifth Amendment right to remain silent; as the Miranda opinion made clear, if a defendant "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease."  Miranda, 384 U.S. at 473-74, 86 S. Ct. at 1627.  In Moseley, the Supreme Court further clarified the contours of the Miranda right to remain silent, stating that "the admissibility of statements obtained after the person

in custody has decided to remain silent depends under Miranda on whether his 'right to cut off questioning' was 'scrupulously honored.'" 423 U.S. at 104, 96 S. Ct. at 326 (quotations in original).

We have indicated that the question of whether a defendant's right to cut off questioning was scrupulously honored requires a case-by-case analysis. Jackson v. Dugger, 837 F.2d 1469, 1472 (11th Cir. 1988). Even if a defendant's request to cease questioning is somewhat equivocal in nature, we have made clear that the government must immediately cease the formal interrogation process; subsequent questioning can be directed only toward clarifying the initial request. Delap v. Dugger, 890 F.2d 285, 290 (11th Cir. 1989). Ultimately, at a minimum, the scrupulously honored standard requires that the government refrain from questioning a suspect unless he both (1) initiates further conversation; and (2) waives the previously asserted right to silence. See Jacobs v. Singletary, 952 F.2d 1282, 1293 (11th Cir. 1992).

In this case, Muhammad was informed of his Miranda rights, including his right to remain silent, immediately after being taken into custody at his home. He indicated at the time that he understood the nature of those rights. Indeed, Muhammad's unequivocal statement during the interrogation that "he did not want to talk to [Inspector Willis] anymore" was a clear invocation of his constitutionally

protected right to cut off questioning and to remain silent. R4 at 8.

In reviewing the record, we conclude that Muhammad's right to cease the interrogation was scrupulously honored by the government. There is uncontroverted evidence that Inspector Willis "ceased questioning [Muhammad] about the robbery" immediately after Muhammad indicated a desire to halt the interrogation. Id. at 9. Although Inspector Willis asked for some biographical information after the interrogation had concluded, these questions did not constitute a recommencement of formal interrogation, since an officer's request for routine information for booking purposes is not considered to be an "interrogation" under Miranda. See United States v. Sweeting, 933 F.2d 962, 965 (11th Cir. 1991). Nor did Inspector Willis' later queries to Muhammad constitute an interrogation; they were merely an attempt to clarify Muhammad's initial request to remain silent.[2] Such clarification was necessary, as Muhammad was sending conflicting signals to Inspector Willis by invoking his right to remain silent and then continuing to talk about the robbery. Such an attempt at clarification does not run afoul of the Miranda right to remain silent, and it does not affect our conclusion that Muhammad's rights were scrupulously honored by the government. See Christopher v. Florida, 824 F.2d 836, 841-42 (11th Cir. 1987).

---

[2] For example, Inspector Willis testified that he asked Muhammad: "[D]o you want to talk about this or not?" R4 at 10.

Moreover, the record supports the conclusion that Muhammad's conduct after invoking his right to remain silent evidenced an intent to re-initiate the conversation with Inspector Willis and to waive his previously asserted right to remain silent. We have held that a suspect re-initiates the questioning if he "evince[s] a willingness and a desire for a generalized discussion about the investigation." Jacobs, 952 F.2d at 1294 (citation omitted). In Jacobs, the defendant invoked her right to remain silent under Miranda, but later began asking questions of the police, such as why she was being held as a suspect. Id. Because this line of questioning was instigated at the behest of the defendant– and without any prompting from the government– we concluded the defendant had "initiated" the interrogation after invoking her right to be silent. Id. at 1294-95.

Similarly, in this case, Muhammad continued to talk about the robbery after Inspector Willis had ceased his formal interrogation. Inspector Willis testified that he had respected Muhammad's desire to cut off the interview, but that while he was completing administrative paperwork Muhammad "talked and talked and [kept] talking" about the police investigation. R4 at 9. As in Jacobs, Muhammad's statements after the termination of the interrogation evinced "a willingness and a desire for a generalized discussion about the investigation." Jacobs, 952 F.2d at 1294. Consequently, we conclude that Muhammad re-instigated the dialogue with

8

the government after his request to cut off questioning had been scrupulously honored.

In addition, the record supports the conclusion that Muhammad waived his previously asserted right to remain silent. A waiver of Miranda rights is effective where the "totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension." Moran v. Burbine, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141 (1986) (quotations and citations omitted). "A suspect may waive [his] Miranda rights either expressly or impliedly." Jacobs, 952 F.2d at 1295.

In this case, Muhammad continued to talk about the robbery and the stolen gun after the interrogation had ceased, at which point Inspector Willis advised Muhammad that "he did not have to continue to talk." R4 at 28. Muhammad has conceded that Inspector Willis expressly informed him that he was entitled to remain silent. Despite being advised of his right to remain silent under Miranda, however, Muhammad indicated to the inspector that he wanted to keep talking about information pertinent to the case. We conclude that, after Muhammad re-initiated the discussion with Inspector Willis, he impliedly waived his Miranda rights by his subsequent conduct and statements.

Muhammad suggests that although Inspector Willis did advise Muhammad

9

of his right to remain silent, he failed to give the Miranda warnings a second time, and that this lack of further Miranda warnings violated his rights.  See Appellant's Brief at 6, 17.  We reject this contention.  Approximately an hour before the interrogation, Inspector Willis had advised Muhammad of his Miranda rights sentence by sentence, by reading them off of a printed card.  At that time, Muhammad indicated that he clearly understood his rights.  Moreover, in similar cases we have held that where a defendant voluntarily re-instigates the interrogation with the police after invoking the Miranda right to be silent, the failure to re-administer Miranda rights is not fatal.  See, e.g., Jacobs, 952 F.2d at 1295 ("Although it would have been preferable for [the police] to have renewed the Miranda warnings prior to asking questions about the shootings, we do not find this factor decisive.").  The totality of the circumstances indicates that Muhammad made a knowing and intelligent waiver of his right to be silent after he wittingly re-initiated the dialogue with the police.  Consequently, the district court acted properly in denying his motion to suppress and admitting the statements that he made to Inspector Willis.

## III.  CONCLUSION

Muhammad has appealed his conviction, contending that the district court erred in denying his motion to suppress statements that he made after invoking his

right to remain silent under <u>Miranda</u>. Upon a careful review of the record, we conclude that the Muhammad's right to remain silent was scrupulously honored until he re-initiated the interrogation by voluntarily making statements to the government, and that, in the course of re-initiating the interrogation, Muhammad impliedly waived his <u>Miranda</u> rights. Therefore the statements he made to the government were properly admitted at his trial. Accordingly, the judgment of the district court is **AFFIRMED.**