UNITED STATES of America,
Plaintiff–Appellee,

v.

Ronald E. SCHWENSOW,
Defendant–Appellant.

No. 97–1168.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 7, 1997.

Decided Aug. 6, 1998.

Eric J. Klumb (argued), Annette K. Ziegler, Office of United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Rod Rogahn (argued), Milwaukee, WI, for Defendant–Appellant.

Before COFFEY, FLAUM, and DIANE P. WOOD, Circuit Judges.

COFFEY, Circuit Judge.

Following a bench trial, the court convicted Ronald Schwensow of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and sentenced him to 262 months' imprisonment. Schwensow appeals his conviction and sentence, arguing that the district court erred in denying his *pro se* motion for a continuance of trial; admitting into evidence statements he made to volunteer workers at an Alcoholics Anonymous office; finding that law enforcement officials did not violate his Fourth Amendment right to be secure in his person, house, and effects or his Fifth Amendment right to remain silent; and refusing to depart downward from the sentencing guideline range on account of his age, poor health, and criminal history. We affirm.

## I. BACKGROUND

By November 28, 1995, Ronald Schwensow had been drinking alcohol steadily for five weeks. Fearing for his health and suffering the effects of alcohol withdrawal, Schwensow called a counselor at a mental health complex in Milwaukee, Wisconsin to discuss entering an alcohol detoxification program. The following night, November 29, 1995, he went in search of the detoxification center the counselor had suggested to him on the telephone. He could neither remember the address of the detoxification center nor the telephone number of the counselor, however, so he went to a local library in West Allis, Wisconsin to see if he could find this information, but he was only able to obtain the address of a nearby Alcoholics Anonymous office.

The Alcoholics Anonymous office in West Allis operates a telephone hotline manned by volunteers; it also sells books, pamphlets and tapes. The office does not provide counseling services to alcoholics. The hotline volunteers have no formal counseling or therapy-related training, and their primary responsibility is to provide information about Alcoholics Anonymous meetings located in the Milwaukee county area. Volunteer phone operators Nancy Curran and Blake Schicker were on duty answering telephone calls on the hotline on the night of November 29, 1995 when Schwensow knocked on the office door and asked for permission to use the telephone to call the detoxification center. Because Schwensow appeared ill, Schicker allowed him to enter the office. Once inside, Schicker assisted Schwensow in calling the mental health complex, which in turn suggested that Schwensow go to a public detoxification center. Schwensow accepted Schicker's offer to drive him to the facility, but added the condition that he first needed to drop off his duffle bag at his, or a friend's, apartment. Reluctant to give him the opportunity to change his mind and be side-tracked from immediately entering detoxification, Curran and Schicker offered to store the bag at the Alcoholics Anonymous office until Schwensow was released from the detoxification program. Schwensow agreed.

After conveying Schwensow to the detoxification center and returning to the Alcoholics Anonymous office, Schicker and Curran opened Schwensow's bag, fearing that it might contain contraband. Inside they found a .380 semi-automatic pistol, a 12 gauge "sawed-off" shotgun, burglary tools, a police scanner, and a mask. Schicker and Curran immediately called police officers, who responded and took possession of the bag. A background check on Schwensow revealed an open warrant for his arrest. The police arrested Schwensow at the detoxification center that same night and transported him to the West Allis Police Department. The detective on duty at the jail, Detective McIntosh, read Schwensow his *Miranda* rights and attempted to ask him a few questions about the bag and its contents. Schwensow verbally waived his right to remain silent and to have an attorney present and denied ownership of the weapons found in the bag. Detective McIntosh then asked for permission to search Schwensow's apartment, but Schwensow refused. When Detective McIntosh advised him that his case was serious, Schwensow responded "I am dying of a progressive liver disease." At this point, Detective McIntosh considered the interview to be over. The next morning, on November 30, 1995, Schwensow was transported to a medical facility for treatment. He returned to the municipal jail the same day.

Detective Benish of the West Allis Police Department arrived at the municipal jail in the morning of December 1, 1995 and found Schwensow asleep in his cell. Detective Benish awakened him, led him to an interview room, and advised him of his *Miranda* rights. Schwensow responded that he was familiar with his rights and that he would like to waive them. He then told Detective Benish that the items in the duffle bag were his and that he had intended to sell them. Schwensow also granted Detective Benish permission to search his apartment, provided he could be present during the search. Detective Benish agreed to this condition and read Schwensow a consent to search form. Schwensow signed the form after stating that he understood it.

Detective Benish, Schwensow, and an additional police officer went to Schwensow's apartment building shortly thereafter. The building manager informed them that because Schwensow had failed to pay his rent, his belongings had been removed from apartment 306 and placed in apartment 200, which the building manager used as a storage area. The group proceeded first to apartment 306, which was devoid of Schwensow's possessions except for a bag containing lockpicking and locksmithing equipment, gloves, a mask, and a flashlight that the police recovered only after Schwensow told them of its concealed location. They then proceeded to apartment 200, where they found more locksmithing items, wigs, and ammunition for a .380 pistol and a shotgun. Schwensow neither voiced an objection to the search of either apartment nor denied ownership of the items recovered.

In the late afternoon of the same day, Detective Benish re-interviewed Schwensow. Detective Benish read Schwensow his *Miranda* rights once more, and Schwensow responded that he again would waive his rights. Schwensow again acknowledged that the duffle bag and the guns left at the Alcoholics Anonymous office were his.

The government charged Schwensow with two counts of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). Prior to trial, defense counsel filed a motion to suppress the statements made to Detective Benish on December 1, 1995 and the evidence seized from Schwensow's apartment building that same day. Schwensow claimed that the statements were made after he had invoked his right to silence and that both the statements and the consent to search were given involuntarily because he was suffering at the time from delirium tremens, blackouts, hallucinations, and the effects of an anti-anxiety medication called Ativan. The district court conducted a hearing and heard testimony from both Detective Benish and Schwensow. Detective Benish testified that Schwensow did not appear to be suffering from hallucinations or to be under the influence of drugs; rather, he was cordial, articulate, and alert. Schwensow testified to the contrary, contending that he constantly thought that the walls were closing in on him

and that the police were going to kill him. The district court denied the motion, finding that Detective Benish was more credible than Schwensow and that there existed no evidence of involuntariness, coercion, or a failure by the police to scrupulously honor Schwensow's Fifth Amendment rights.

The district court also denied Schwensow's motion to preclude the government from offering at trial any evidence obtained as a result of his communications with the Alcoholics Anonymous telephone hotline volunteers Curran and Schicker on the ground that they were not counselors qualified to hear confidential communications. Schwensow argued that he believed Curran and Schicker were professional counselors and that the advice they gave him constituted "the early stages of treatment." The district court subsequently reexamined its ruling in light of the Supreme Court's decision in Jaffee v. Redmond, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), which recognized a psychotherapist-patient privilege under Federal Rule of Evidence 501, and again concluded that Curran and Schicker were not persons qualified to receive confidential communications because they were not licensed psychiatrists, psychotherapists, social workers, or any other kind of counselor to whom the psychotherapist-patient privilege could attach, and because Schwensow's statements were not made for purposes of obtaining treatment.

Schwensow went to trial and the court found him guilty on both counts of the indictment. The judge subsequently sentenced him to 262 months' imprisonment.

## II. ISSUES

Schwensow advances five arguments for our consideration. Initially, he contends that the district court violated his rights under the Speedy Trial Act when it commenced trial less than thirty days after he decided to proceed *pro se* and, alternatively, abused its discretion when it refused to grant him a continuance. Second, he asserts that the court erred in refusing to suppress the statements he made to the Alcoholics Anonymous workers the night of his arrest. Third, he maintains that the trial judge erroneously

admitted into evidence the statements he made to Detective Benish on December 1, 1995. Fourth, he claims that the district court erroneously admitted into evidence items seized from his apartment building on December 1, 1995. Fifth, he contends that the court erroneously failed to depart downward from the United States Sentencing Guidelines because of his advanced age, poor physical condition, and the extreme age of his criminal history (his prior convictions were in 1973 and 1986).

## III. DISCUSSION

### A. The Denial of Schwensow's Request for a Continuance

■■ Initially, Schwensow contends that the district court violated the Speedy Trial Act, 18 U.S.C. § 3161(c)(2), by commencing trial less than thirty days after he decided to proceed *pro se*, and abused its discretion when it refused to grant his last-minute request for a continuance. Schwensow's failure to raise these issues before the district court renders our review limited to plain error. *United States v. Wilson,* 134 F.3d 855, 862 (7th Cir.1998).

Even though Schwensow's original trial date was set for February 20, 1996, he discharged his court-appointed attorney two weeks before trial and filed a motion requesting the appointment of new counsel. The court granted the motion, agreed to appoint another attorney, and postponed trial until the appointment had been made. On March 19, 1996, Schwensow's new attorney filed a motion for adjournment of trial. The trial court granted the motion and reset the trial for April 15, 1996. On April 9, 1996, defense counsel filed a second motion for adjournment of trial. The court granted the motion and again postponed the trial until May 20, 1996. On May 9, 1996, defense counsel filed a third motion for adjournment of trial. Again, the court granted the motion and rescheduled the trial for August 5, 1996. On June 27, 1996, the court conducted the final pretrial conference. At the conference, defense counsel explained that he had been unable to retain a medical expert. The court granted the defendant additional time to re-

tain a qualified expert and also agreed to reschedule the trial for October 7, 1996. On September 27, 1996, Schwensow filed a motion to be relieved of his second court-appointed counsel and for permission to proceed *pro se*. The district court granted the motion on October 4, 1996, also accepting Schwensow's waiver of a trial by jury at that time. On the day of trial, Schwensow requested a continuance, explaining that he had not had adequate time to prepare his case. The court denied the request, citing its crowded court calendar and the age of the case as the reasons for its denial. Schwensow represented himself during the morning session of the first day of trial and then permitted his former court-appointed attorney, who had been acting as stand-by counsel pursuant to the court's direction, to conduct the remainder of trial.

Section 3161(c)(2) of the Speedy Trial Act prohibits a trial from taking place before the defendant has had an opportunity to prepare his defense. Specifically, it provides that "[u]nless the defendant consents in writing to the contrary, the trial shall not commence less than thirty days from the date on which the defendant first appears through counsel *or expressly waives counsel and elects to proceed pro se*." 18 U.S.C. § 3161(c)(2) (emphasis added). Focusing on the italicized language of the statute, Schwensow asserts that the relevant date for purposes of starting the 30-day countdown to trial is October 4, 1996—the date the district court granted his request to proceed *pro se*. Under his

reading of the Act, it was error for the district court to commence trial only three days later.

Schwensow's argument fails. We rejected this very argument in *United States v. Moya–Gomez*, 860 F.2d 706 (7th Cir.1988), where the defendant contended that the 30–day period under § 3161(c)(2) was triggered by his request to proceed *pro se* 21 days before trial, not by his appearance through counsel two and a half months before trial. We found this argument to be unpersuasive and held that MoyaGomez's 30–day preparatory period began the day his counsel filed a general appearance on his behalf, not on the day he decided to dismiss his attorney and proceed *pro se*. *Id.* at 741. "To interpret the statute otherwise," we stated, "would enable a defendant to postpone his prosecution by deciding on the even [sic] of trial that he wants to dismiss his attorney and represent himself." *Id.* at 741–42. We also decline Schwensow's invitation to reconsider *Moya–Gomez*. The Speedy Trial Act was satisfied in this case because Schwensow had at least nine months to prepare for trial after his initial appearance with counsel.[1] Schwensow's decision to dismiss his lawyer and proceed *pro se* less than two weeks before trial was a decision he made at his own peril, and it matters not what motivation underscored his decision.

■■■ Alternatively, Schwensow contends that the district court abused its discretion when it declined to continue the trial.[2] The

---

1. As in *Moya–Gomez*, we need not decide the exact meaning of the phrase "first appears through counsel." *Cf. Moya–Gomez*, 860 F.2d at 741 n. 30 (discussing the Ninth Circuit's approach to this question in *United States v. Daly*, 716 F.2d 1499, 1505 (9th Cir.1983) (defendant first appears through counsel when he is represented by counsel engaged or appointed to represent him at trial), and the Eleventh Circuit's approach in *United States v. Darby*, 744 F.2d 1508, 1520 n. 5 (11th Cir.1984) (section 3161(c)(2) only guarantees a defendant thirty days between arraignment and trial)). *See also United States v. Storm*, 36 F.3d 1289, 1293–94 (5th Cir.1994) (appearance through counsel did not occur until the defendant appeared with actual trial counsel). In this case, the record clearly reflects that on December 8, 1995, Schwensow appeared before Magistrate Judge Patricia Gorence accompanied by his first court-appointed attorney, John Miller Carroll, and that on De-

cember 15, 1995, Schwensow appeared, along with John Miller Carroll's associate, Kevin Burke, before Magistrate Judge Aaron Goodstein and entered a plea of not guilty. Thus, regardless of whether we use December 8, 1995 or December 15, 1995 as the day Schwensow "first appeared through counsel," Schwensow had well in excess of 30 days to prepare for trial.

2. Although Congress intended through § 3162(c)(2) of the Speedy Trial Act to guarantee a defendant a minimum period with which to prepare for trial, " 'the statute only partially addresses Congressional concern about the adequacy of preparation. . . .' " *Moya–Gomez*, 860 F.2d at 742 (quoting *Darby*, 744 F.2d at 1520) (internal quotations omitted). To ensure adequate preparation time under circumstances that do not lend themselves to rigid statutory application, district courts retain " 'discretion to grant a

**656**

district court denied Schwensow's motion, made on the actual day of trial, due to its crowded docket and the fact that the case had been on the trial calendar for over seven months. We will reverse the trial court's denial of a continuance only for an abuse of discretion and a showing of actual prejudice. *United States v. Depoister*, 116 F.3d 292, 294 (7th Cir.1997).

■ The district court was in the best position to evaluate and assess the circumstances presented by Schwensow's request for a continuance, and we find nothing in the record to support the contention that the court's decision to deny the request was an abuse of discretion. Relevant factors to this determination include "the quantum of time available for preparation, the likelihood of prejudice from denial, the accused's role in shortening the effective preparation time, the degree of complexity of the case, [and] the availability of discovery from the prosecution." *United States v. Studley*, 892 F.2d 518, 522 (7th Cir.1989) (quoting *United States v. Uptain*, 531 F.2d 1281, 1286 (5th Cir.1976)). Other factors include the conduct of the other party, the likelihood that the continuance would have satisfied the movant's need, and the inconvenience to the court. *United States v. Windsor*, 981 F.2d 943, 948 (7th Cir.1992). As noted above, Schwensow had almost ten months to prepare for trial after an attorney first appeared on his behalf. During those ten months, the court agreed to postpone the trial dates four separate occasions to accommodate Schwensow's desire for a new attorney and his new attorney's repeated requests for additional time to secure and review Schwensow's medical records. The district court was under no obligation to permit another delay in the case to enable Schwensow to review documents that his attorneys had possessed for many months, particularly since Schwensow's former counsel agreed to act as stand-by counsel during the trial. *See Depoister*, 116 F.3d

at 295 (no abuse of discretion to deny continuance where the defendant previously had received three continuances and where documents defense counsel allegedly had been unable to review were readily accessible).

Schwensow also accuses the trial court of being largely responsible for shortening his preparation time by waiting to rule on his motion to proceed *pro se* until three days before trial. We are forced to disagree with Schwensow's lament that he only had three days to prepare for trial because nothing prevented Schwensow from preparing for trial while awaiting the district court's decision regarding his motion. This is certainly one of the many dangers of proceeding *pro se* in a criminal trial, particularly just two weeks before trial. The end result was brought on exclusively by the actions of the defendant, especially his inclination to alter the status of his legal representation. *See United States v. Studley*, 892 F.2d 518, 521–22 (7th Cir. 1989) (affirming the district court's denial of a motion for a continuance where the defendant's insistence on proceeding *pro se* until one week before trial played a significant part in undermining the ability of newly-appointed counsel to prepare for trial).

### B. The Admission of Schwensow's Statements to the Alcoholics Anonymous Workers

■ Next, Schwensow maintains that the district court committed reversible error when it ruled that his statements to the Alcoholics Anonymous volunteer telephone operators Curran and Schicker were not protected from compelled disclosure as confidential statements under Rule 501 of the Federal Rules of Evidence.[3] We review the district court's determination on this issue for an abuse of discretion. *Patterson v. Caterpillar, Inc.*, 70 F.3d 503, 506 (7th Cir.1995).

Sixth months before Schwensow's arrest in November of 1995, this circuit joined the

continuance where necessitated by the circumstances of counsel's retention or appointment...'" *Id.*

**3.** Rule 501 provides that the privilege of a witness "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason

and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness ... shall be determined in accordance with State law." Fed. R. Evid. 501.

Second and Sixth Circuits in recognizing a psychotherapist-patient privilege in both criminal and civil cases. *See Jaffee v. Redmond,* 51 F.3d 1346 (7th Cir.1995). Specifically, we found that psychotherapists and patients share a special relationship, the success of which depends on "the patient's ability to speak freely without the fear of public disclosure," and we accordingly concluded that communications between a psychotherapist and his patients are protected from disclosure under Rule 501. *Id.* at 1355–56. The defendants in *Jaffee* appealed our decision to the Supreme Court, which granted certiorari. *Jaffee v. Redmond,* 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). The Court, in affirming in large part our decision, emphasized that effective psychotherapy "depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears," and that any disclosure of sensitive communications may well cause embarrassment and disgrace and impede the development of a confidential relationship between therapist and patient. Consequently, the Court concluded that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Id.* at 10, 15, 116 S.Ct. 1923.

■ Our first task is to determine whether or not the district court erred in concluding that Curran and Schicker failed to qualify as psychotherapists, social workers, or another kind of counselor entitled to receive privileged communications. Having reviewed the record, we are convinced that the trial court did not commit error in deciding this issue. It is undisputed that neither Curran nor Schicker possessed credentials that might qualify them as licensed to receive privileged communications. Nor did they act or hold themselves out to be acting in the capacity of counselors, much less licensed counselors. They did not identify themselves as therapists or counselors, nor did they confer with Schwensow in a fashion that resembled a psychotherapy session. Further, the Alcoholics Anonymous office did not contain any indicia of being an office that provided counseling services. Moreover, Schicker testified at trial that he has a bachelor's degree in marketing and has never received any training in psychotherapy, social work, or any other kind of counseling. Similarly, Curran testified that she has an associate's degree in hotel/restaurant management and has never had any kind of mental health training.[4]

■ We agree with the trial judge's ruling that Schwensow did not speak with Curran and Schicker for purposes of diagnosis or treatment and thus did not engage in "confidential communications." Accordingly, we find no abuse of discretion. Schwensow approached the Alcoholics Anonymous office because the local library was unable to provide an address for a detoxification center, not because he wanted help coping with his alcoholism. In fact, he testified at trial that he had made up his mind to enter detoxification even before venturing in search of the

---

4. Other than licensed psychiatrists, psychologists and social workers, the Supreme Court in *Jaffee* did not define "psychotherapist." The district court, citing language from *Jaffee* indicating that the new privilege should be handled on a case-by-case basis, decided to look to Wisconsin's own version of the psychotherapist-patient privilege for assistance in determining the scope of the psychotherapist-patient privilege. *See* Wisc. Stat. Ann. § 905.04; *Jaffee,* 518 U.S. 1, 18, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). Wisconsin's statute includes within the scope of the privilege physicians, registered nurses, chiropractors, psychologists, social workers, marriage and family therapists, and professional counselors. A professional counselor is defined, in part, as "an individual reasonably believed by the patient to be a professional counselor." We are not convinced that the district court's reliance on state law was correct. Although the Supreme Court in *Jaffee* indicated that it had not yet defined the parameters of the privilege, it noted "disagreement concerning the proper rule in cases [where] ... relevant evidence would be privileged under state law but not under federal law." *Jaffee,* 518 U.S. at 15 n. 15, 116 S.Ct. 1923. The Court expressed no opinion about the proper outcome, however, since the parties had not briefed the issue. We likewise express no opinion on the extent to which state law should guide our analysis, although we note that even if we were to apply Wisconsin's version of the psychotherapist-patient privilege, Curran and Schicker could not qualify as they neither possessed the credentials of any of the professionals enumerated in the statute nor held themselves out in such a way as to lead Schwensow to believe they were professional counselors.

Alcoholics Anonymous office. Once at the office, the defendant simply asked to use the telephone. With Schicker's aid, he learned the address of a detoxification center. These interactions did not relate to diagnosis, treatment, or counseling of Schwensow for purposes of attempting to treat his alcoholism; rather, they involved a request to use the telephone, encouragement to stick to an already formulated plan to enter detoxification, a discussion about what to do with a bag, and an offer of a ride. Under no circumstances can these communications be interpreted as "confidential communications" entitled to protection from disclosure under Rule 501.

### C. The Admissibility of Schwensow's Statements to Detective Benish

 Next, Schwensow challenges the district court's denial of his motion to suppress the statements he made to Detective Benish on December 1, 1995. Schwensow argues that he invoked his right to cut off questioning and to remain silent the night of his arrest, such that Detective Benish's two interviews on December 1, 1995 constituted a failure to "scrupulously honor" his Fifth Amendment rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We review de novo legal determinations made with respect to a suppression ruling, and factual determinations are reviewed under the clearly erroneously standard. United States v. Thomas, 11 F.3d 1392, 1396 (7th Cir.1993).[5]

Even though Schwensow may have invoked his right to silence, the police were entitled to resume questioning later. In Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), the Supreme Court clarified that Miranda cannot be read to create a per se proscription against any further questioning by any police officer, on any topic, once the suspect has expressed a

wish to remain silent. Id. at 102–03, 96 S.Ct. 321. Rather, the Court concluded that "the admissibility of statements obtained after the person in custody had decided to remain silent depends under Miranda on whether his 'right to cut off questioning' was 'scrupulously honored.'" Id. at 104, 96 S.Ct. 321. To determine whether a suspect's right to cut off questioning was "scrupulously honored," Mosley established a multi-factor test that includes an inquiry into the amount of time that lapsed between interrogations; the scope of the second interrogation; whether new Miranda warnings were given; and the degree to which police officers pursued further interrogation once the suspect had invoked his right to silence. Id. at 104–05, 96 S.Ct. 321. Applying these factors, the Court concluded that the suspect's right to cut off questioning was scrupulously honored and his statement to the police correspondingly admissible where the police immediately ceased interrogation upon the suspect's invocation of the right to remain silent; the police resumed questioning only after a significant amount of time had passed and a fresh set of Miranda warnings had been provided; and the second interrogation concerned a crime different from the one discussed at the earlier interrogation. Id. Any other outcome, the Court believed, "would transform the Miranda safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests." Id. at 102, 96 S.Ct. 321.

The trial court ruled that Detective Benish's interviews were proper under Mosley because the police immediately ceased questioning Schwensow upon his invocation of the right to remain silent and did not resume questioning until a significant amount of time (36 hours) had lapsed and a fresh set of

---

5. Schwensow never expressly invoked this right during his interview with Detective McIntosh. Rather, he denied ownership of the duffle bag and its contents, profanely refused to permit a search of his apartment, and responded to Detective McIntosh's observation that his case was serious by saying: "I'm dying of a progressive liver disease." Detective McIntosh took these collective responses as an indication that he did not want to talk about the case. Based on the

testimony elicited during a hearing conducted to rule on Schwensow's motion to suppress, the district court concluded that Schwensow invoked his right to silence. Because this was a factual determination based on the entire context within which Schwensow spoke to Detective McIntosh, we will not substitute our judgment for the district court's decision. United States v. Banks, 78 F.3d 1190, 1199 (7th Cir.1996).

*Miranda* warnings had been provided. Although the crime discussed during the period of the second and third interrogations covered the same sphere of inquiry at issue in the first interrogation, the court felt that this factor did not render the latter interviews unconstitutional. Schwensow does not contest the district court's conclusion that the police immediately ceased interrogation upon his alleged possible invocation of silence or that the police provided fresh warnings prior to commencing the second and third interrogations. What Schwensow takes issue with is the fact that the subsequent interviews concerned the same subject matter that was discussed at the first interview. This variance, Schwensow maintains, is at odds with *Mosley* and renders the subsequent statements unconstitutional.

This circuit has not yet ruled on the issue of whether *Mosley* is satisfied when a suspect invokes his right to silence and the police later resume questioning regarding the same crime. However, many of our sister circuits have addressed this very question and concluded that a second interview is not rendered unconstitutional simply because it involved the same crime as previously discussed. *United States v. Andrade*, 135 F.3d 104, 106–07 (1st Cir.1998); *Hatley v. Lockhart*, 990 F.2d 1070, 1074 (8th Cir.1993); *United States v. Hsu*, 852 F.2d 407, 410 (9th Cir.1988); *Jackson v. Dugger*, 837 F.2d 1469, 1471–72 (11th Cir.1988); *United States v. Smith*, 608 F.2d 1011, 1014–15 (4th Cir.1979); *Wilson v. Henderson*, 584 F.2d 1185, 1188–89 (2d Cir.1978). The Ninth Circuit, for instance, has adopted a flexible approach to post-*Mosley* cases that focuses on whether fresh warnings were given at the start of the second interview and whether the police exerted pressure on a suspect to extract information. The amount of time between interrogations or the subject matter discussed are not determinative. *Hsu*, 852 F.2d at 410–11. And the Eighth Circuit seeks to determine whether the police "persisted in 'repeated efforts to wear down the person's resistance' in order to change the person's version of the facts." *United States v. McClinton*, 982 F.2d 278, 282 (8th Cir.1992) (quoting *Mosley*, 423 U.S. at 105–06, 96 S.Ct. 321).

■ We join these circuits in holding that the constitutionality of a subsequent police interview depends not on its subject matter but rather on whether the police, in conducting the interview, sought to undermine the suspect's resolve to remain silent. This approach naturally follows from *Mosley*, which neither elevates any one factor as predominant or dispositive nor suggests that the enumerated factors are exhaustive, but instead directs courts to focus on whether the confession "was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton*, 474 U.S. 104, 112, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). With these principles in mind, we agree with the district court's decision to admit Schwensow's December 1, 1995 statements into evidence. The record reflects that Detective McIntosh interpreted Schwensow's comments as indicating a desire to cease questioning. Detective Benish did not resume questioning until approximately 36 hours later, after he had administered fresh *Miranda* warnings. There is no evidence that Detective Benish in any way sought to wear down Schwensow's will to remain silent. To the contrary, the record demonstrates that Schwensow was lucid at the time of Detective Benish's interviews, that he freely and voluntarily waived his *Miranda* rights, and that he expressed a desire to talk with the police. Thus, under the totality of the circumstances, we conclude that Schwensow's right to remain silent was "scrupulously honored."

■ In the alternative, Schwensow contends that the statements he made to Detective Benish on December 1, 1995 should be suppressed because his alcohol and drug-impaired mental state at the time of Detective Benish's interviews precluded a valid waiver of his *Miranda* rights. We review *de novo* a district court's determination of whether a *Miranda* waiver was knowing and voluntary. *United States v. Doe*, 149 F.3d 634, 639–40 (7th Cir. July 13, 1998); *United States v. Westbrook*, 125 F.3d 996, 1001 (7th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 643, 139 L.Ed.2d 621 (1997). Findings of historical fact are reviewed deferentially, however, and may be reversed only for clear error, with due weight given to inferences

drawn from those facts. *Doe,* 149 F.3d at 639–40.

The question of whether Schwensow provided Detective Benish with a knowing and voluntary waiver of his *Miranda* rights is essentially one of fact. *United States v. Brooks,* 125 F.3d 484, 491 (7th Cir.1997). Schwensow offers us no reason to reject the district court's factual conclusion that he validly waived his *Miranda* rights prior to Detective Benish's December 1, 1995 interviews. At the suppression hearing, the court heard believable testimony from Detective Benish that Schwensow gave no indication of being impaired, and unbelievable testimony from Schwensow that delirium tremens, blackouts, and hallucinations caused by alcohol withdrawal and Ativan prevented a knowing and intelligent waiver. "[W]e defer to the court's thorough and specific findings of fact, which were based to a great extent on the judge's observation of the witnesses' demeanor as each one described the circumstances of the ... interview." *Id.* Our own *de novo* review of the record confirms our conclusion that Schwensow was not impaired by the effects of alcohol withdrawal and Ativan at the time of Detective Benish's interviews so as to render his *Miranda* waiver involuntary. Accordingly, the district court's determination that Schwensow's December 1, 1995 statements were made subsequent to a knowing and voluntary waiver of his Fifth Amendment rights was not clearly erroneous.

### D. The Admissibility of the Evidence Seized from Schwensow's Apartment Building

▆ Next, Schwensow argues that the district court violated his Fourth Amendment right to be secure in his person, house, and effects when it denied his motion to suppress the evidence seized from his apartment building on December 1, 1995, which included masks, wigs, lockpicking equipment, and ammunition. He maintains that the search was invalid because it was conducted without a warrant and without a voluntary consent. Once again, Schwensow claims that the involuntariness of the consent to search stems from the deleterious effects of his alcohol withdrawal and Ativan medication. We re-

view the district court's determination for clear error. *United States v. Mitchell,* 64 F.3d 1105, 1109 (7th Cir.1995); *United States v. McAllister,* 18 F.3d 1412, 1416 (7th Cir. 1994).

The same analysis governs this issue as governed the question of whether Schwensow's December 1, 1995 statements were voluntarily made. *See United States v. White,* 979 F.2d 539, 542 (7th Cir.1992) (whether consent is given freely and voluntarily depends on the totality of the circumstances). And the same facts supporting the district court's finding that Schwensow's statements to Detective Benish were voluntary support the finding that Schwensow consented to the search of his apartment. Although Schwensow refused to give consent on November 29, 1995, the record reflects that Detective Benish asked Schwensow during the first December 1, 1995 interview whether he would consent to a search of his apartment. Schwensow responded affirmatively, provided he could accompany the police during the search. Detective Benish agreed and proceeded to read Schwensow the police department's consent to search form, which Schwensow promptly signed. Accordingly, we find no error with the district court's conclusion that Schwensow voluntarily consented to the search of his apartment.

▆ Separate mention is warranted with respect to the search of apartment 200, which is the apartment that housed Schwensow's possessions after he fell behind in his rent. The district court concluded that Schwensow had no subjective or objective expectation of privacy in apartment 200 because he did not pay rent for the apartment, did not have a key to the apartment, and never used the apartment for any purpose. Schwensow argues that because he was unaware of, and did not consent to, the removal of his property, he retained a valid privacy interest as to apartment 200. We find no merit to Schwensow's argument, and we part ways somewhat with the district court's analysis. When Schwensow granted Detective Benish permission to search apartment 306, he believed his belongings all resided within that apartment. Accordingly, he signed a consent form that permitted Detective Benish to search

through all of his possessions. Although Schwensow and Detective Benish later discovered that Schwensow's possessions had been moved to a different apartment, we do not believe this action negated the consent, particularly in view of the fact that Schwensow did not voice any objection contemporaneous with the search of apartment 200. Accordingly, we conclude that the consent to search form Schwensow signed at the jail gave Detective Benish permission to search his possessions, regardless of their exact location.

#### E. The Refusal to Depart Downward on Schwensow's Sentence

Finally, Schwensow argues that the district court abused its discretion in failing to depart downward on his sentence on account of his age (58), poor physical condition (liver disease), and the age of his prior criminal history (prior convictions in 1973 and 1986). This court is without jurisdiction to review this claim. We "do not possess jurisdiction to review [the] district court's discretionary refusal to depart downward from the sentencing guidelines." *United States v. Cureton*, 89 F.3d 469, 474 (7th Cir.1996). Schwensow does not claim that the district court imposed his sentence in violation of the law or as a result of an incorrect application of the sentencing guidelines; exceeded the sentence specified in the sentencing guidelines; or imposed a sentence for an offense for which there is no sentencing guideline and the sentence is plainly unreasonable. *See* 18 U.S.C. § 3742(a). These are the only grounds upon which we may review a sentence.

The judgment entered by the district court is AFFIRMED.