In the

# United States Court of Appeals
## For the Seventh Circuit

No. 04-3331

MONICA COSBY,

*Petitioner-Appellant*,

*v.*

MARY SIGLER, Warden, Dwight
Correctional Center,[Œ]

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 2077—**Blanche M. Manning**, *Judge.*

ARGUED NOVEMBER 8, 2005—DECIDED JANUARY 18, 2006

Before BAUER, MANION, and EVANS, *Circuit Judges.*

MANION, *Circuit Judge.* Monica Cosby was convicted in
Illinois state court of first-degree murder for helping her
boyfriend kill his mother and conceal her body. After
pursuing a direct appeal and seeking collateral relief in the
Illinois courts, Cosby filed a petition for a writ of habeas

---

[Œ] Mary Sigler, the current warden of the Dwight Correctional
Center, has been substituted for Alyssa B. Williams as respondent
pursuant to Fed. R. App. P. 43(c).

corpus in federal court. The district court denied the petition. Cosby appeals. We affirm.

## I.

The gruesome facts of this case challenge the imagination. Monica Cosby began living with her boyfriend, Kmuel (or Kevin) King shortly after Halloween in 1995. They shared an apartment that Cosby thought was Kmuel's, but it actually belonged to Kmuel's mother, Bobbie Jean King. Cosby's three children, ages seven, four, and one at the time, who had been staying with Cosby's parents, joined her there shortly before Thanksgiving. Kmuel's mother soon returned to reside in the apartment with her own infant son. This combination left three adults and four young children in the one-bedroom, one-bathroom apartment. Bobbie relinquished use of the bedroom and slept in another area on the floor next to her own infant's crib.

Not surprisingly, tensions peaked around Christmas because Bobbie, who was not a Christian, did not want a Christmas tree in her home. Bobbie was already highly irritated by the overcrowded conditions imposed upon her apartment. Although Cosby testified that Bobbie never objected to the additional residents, other evidence suggested that Bobbie insisted that Cosby and her children leave. Regardless, Cosby testified that she planned to leave anyway because of a breakdown in her relationship with Kmuel shortly after Christmas.

What happened next is gleaned primarily from Cosby's testimony at trial. In the early hours of December 27, 1995, Cosby and Kmuel ingested alcohol and marijuana at a gathering in another apartment. After they returned, Bobbie was upset due to their late arrival. Cosby testified that

Kmuel and his mother began to argue, while Cosby ate cake with her children in the kitchen and listened to the radio. Kmuel then entered the kitchen and informed Cosby that he had just killed his mother, doing it "for [her]."

Cosby and Kmuel then went to the bathroom, where they viewed the body. Blood from Bobbie's beaten head covered the floor. At Kmuel's request, Cosby fetched a plastic bag. Although in a statement to the police Cosby stated that she placed the bag over Bobbie's head, at trial she testified that Kmuel did it. Kmuel tied an electrical cord around the bag. Together, they maneuvered the body into the bathtub, placing plastic bags of laundry over her. They also bound Bobbie's arms and legs. Cosby and Kmuel then engaged in sexual relations on the living room floor while the children were asleep in the bedroom.

The next morning the body remained in the bathtub, even as the children used the bathroom. Several times during the day, while Cosby was present in the apartment, Bobbie's daughter came looking for Bobbie. The police also visited to investigate the disappearance. In the wake of these inquiries, Cosby and Kmuel decided to relocate and ultimately dispose of the body. They placed the victim in a shopping cart piled with laundry bags, laundry detergent, and fabric softener. They then moved the shopping cart to a neighbor's closet, claiming that they needed a place to store some dirty laundry. Cosby later led a friend to the body. The police were alerted and arrested both Cosby and Kmuel on the evening of December 27, 1995.

Cosby's mother arranged for an attorney, a family friend who did not practice criminal law, to visit her at the police station that night. The attorney conferred with Cosby for approximately forty-five minutes. As the attorney departed at 12:45 a.m., he advised the officers that Cosby

was invoking her right to remain silent. Cosby also asserted this right. The officers returned about two hours later, informed her of her *Miranda* rights, and confronted Cosby with statements made by Kmuel. Cosby made two statements, one at 3:00 a.m. and another, after again being informed of her *Miranda* rights, at 9:00 a.m. The two statements each recounted the preceding events in substantially identical detail, except that in the 9:00 a.m. statement, Cosby stated that <u>she</u> placed the bag over the victim's head. Cosby was subsequently charged with first-degree murder and concealment of a homicidal death.

Cosby's trial counsel prepared a motion to suppress the statements, but filed it with an incorrect case number. The motion was never re-filed or decided by the court. At the bench trial, the prosecution offered the 9:00 a.m. statement, but not the 3:00 a.m. statement, into evidence. Cosby's counsel did not object. Instead, Cosby's counsel pursued a defense that was consistent with the statements: a mistake-of-fact defense. He argued that Cosby believed Bobbie to be dead when she or Kmuel placed the bag over Bobbie's head and bound her limbs. Since Cosby believed the victim was dead, counsel argued, she could not be guilty of first-degree murder. At the bench trial, the medical examiner testified that Bobbie was still alive when the bag and bindings were secured. She died as a result of strangulation, with blunt force trauma to the head as a major contributing factor. Cosby testified and, contrary to her earlier statement, claimed that Kmuel placed the bag over Bobbie's head. The judge found Cosby to be incredible and found her guilty on both counts.

After her direct appeal and state collateral proceedings, Cosby filed a petition for a writ of habeas corpus in federal district court pursuant to 28 U.S.C. § 2254. In her

petition, she asserted her actual innocence and claimed ineffective assistance of counsel, as well as violations of her right to remain silent, her right to counsel, and her right to due process. The district court denied the petition, but granted a certificate of appealability. This appeal followed.

## II.

At the outset, we note that the district court only certified one issue for appeal: whether Cosby's "counsel was ineffective for failing to seek suppression of her statement because it was taken in violation of her right to counsel and her right to remain silent." Before this court, Cosby briefed claims regarding her right to counsel and her right to remain silent as independent issues. If a petitioner "includ[es] issues in its briefs that were not specified in the certificate," we construe this as a request "to amend a certificate to include additional issues." *Ouska v. Cahill-Masching*, 246 F.3d 1036, 1045 (7th Cir. 2001) (citations omitted). As discussed below, Cosby fails to make a "substantial showing of the denial of a constitutional right" regarding her right to counsel or her right to remain silent. 28 U.S.C. § 2253(c)(2). We therefore decline to amend the certificate and address these claims only in the context of her counsel's alleged ineffectiveness.

We review the district court's denial of the petition for a writ of habeas corpus de novo. *Balsewicz v. Kingston*, 425 F.3d 1029, 1031 (7th Cir. 2005) (citation omitted). Habeas corpus relief is warranted only if the state court adjudication " '[1] resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or [2] 'resulted in a decision that was based upon an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding.' " *Id.* (quoting 28 U.S.C. § 2254(d)).

Cosby argues that her trial counsel was ineffective and that the state court's determination to the contrary was an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate ineffective assistance of counsel under the familiar standard of *Strickland*, Cosby "must show that [her] counsel's performance was deficient and that the deficient performance prejudiced [her] defense." *Martin v. Grosshans*, 424 F.3d 588, 590 (7th Cir. 2005) (citing *Strickland*, 466 U.S. at 687). As noted, Cosby claims that the 9:00 a.m. statement was inadmissible and her counsel's failure to suppress it constituted ineffective assistance. To address this claim, the Appellate Court of Illinois began by examining whether there was a reasonable probability that the motion to suppress would have been granted. *See A.M. v. Butler*, 360 F.3d 787, 795 (7th Cir. 2004) ("If there was no underlying constitutional violation, a motion to suppress would have been futile and counsel could not be viewed as ineffective for failing to present such a motion." (citation omitted)).

In considering the potential for suppression based on an alleged violation of the right to remain silent, the Illinois court relied on *Michigan v. Mosley*, 423 U.S. 96 (1975). Under *Mosley*, if a suspect invokes the right to remain silent, the authorities must scrupulously honor the suspect's right to cut off questioning, but may resume questioning in certain circumstances. *See United States v. Schwensow*, 151 F.3d 650, 658 (7th Cir. 1998) (citing *Mosley*, 423 U.S. at 102-05). In *Mosley*, the Supreme Court identified several factors relevant to considering whether questioning may resume after an individual invokes the right to silence: "the amount of time that lapsed between interrogations; the scope of the

second interrogation; whether new *Miranda* warnings were given; and the degree to which police officers pursued further interrogation once the suspect had invoked his right to silence." *Id.* (citing *Mosley*, 423 U.S. at 104-05); *see also United States v. Gillaum*, 372 F.3d 848, 856 (7th Cir. 2004). Applying these factors, the Illinois court noted that although Cosby did invoke her right to remain silent, the police scrupulously honored her right, ceasing questioning for over two hours. The Illinois court also noted that the officers gave Cosby fresh *Miranda* warnings before she made the 3:00 a.m. statement. The Illinois court determined that this statement "would not have been subject to suppression." Furthermore, as the Illinois court noted, the 3:00 a.m. statement was not admitted at trial; only the later 9:00 a.m. statement was admitted. The Illinois court further determined that the 9:00 a.m. statement, which also occurred after additional *Miranda* warnings, was similarly not a violation of her right to remain silent.

This determination was not an unreasonable application of *Mosley*. The Illinois court considered the proper Supreme Court standard and applied the standard to the facts of this case in a reasonable manner. Cosby appears to argue that the application was unreasonable because the state court did not consider additional facts, such as that she was not provided with food or drink, was left chained to a wall in an interview room, and was informed that she would be charged based on Kmuel's statement if she remained silent. Nothing in the record suggests that Cosby requested food or water. To the contrary, her statement indicated that she was given water and "refused any other food or drink." Furthermore, her location in an interview room and the confrontation with Kmuel's statements does not render the Illinois court's determination an unreasonable application of the law. Prior to making her statement,

the police did not disturb Cosby for over two hours, and for approximately forty-five minutes before that period, she conferred with an attorney. She was also permitted to use the bathroom accompanied by a female officer. Although the police informed her of Kmuel's statement, there is no indication that questioning was resumed in an attempt to "wear down" Cosby's "will to remain silent." *Schwensow*, 151 F.3d at 659. Notably, the assertion that she would be charged if she remained silent was made in the presence of the attorney who visited her, and she reasserted her right to remain silent. Under the circumstances, the Illinois Appellate Court reasonably concluded that Cosby's 9:00 a.m. statement admitted at trial was not taken in violation of her right to remain silent under *Mosley*.

Cosby also claims that her statement should be suppressed because it was taken in violation of her right to counsel. If a suspect invokes the right to counsel, " 'the interrogation must cease until an attorney is present' " or the right is waived. *Edwards v. Arizona*, 451 U.S. 477, 482 (1981) (citing *Miranda v. Arizona*, 384 U.S. 436, 474 (1966)); *see also Jackson v. Frank*, 348 F.3d 658, 662-63 (7th Cir. 2003). The Supreme Court has held that "[i]nvocation of the *Miranda* right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.' " *Davis v. United States*, 512 U.S. 452, 459 (1994) (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991)). The statement "must unambiguously request counsel." *Id.* at 459. Furthermore, "[u]nless the suspect actually requests an attorney, questioning may continue." *Id.* at 462. This court has elaborated that an "attorney's involvement does not serve to automatically invoke [a suspect's] right to counsel under *Miranda*, for *McNeil* [*v. Wisconsin*, 501 U.S. 171, 178 (1991)] still requires that there be an *expression* of the suspect's wish" for counsel.

*United States v. McKinley*, 84 F.3d 904, 910 (7th Cir. 1996). In this case, Cosby never made a verbal statement requesting an attorney. An attorney met with her at the police station, but the attorney himself said nothing about Cosby's right to counsel, even when invoking her right to remain silent. The simple fact that Cosby conferred with an attorney in these circumstances is insufficient to constitute a statement invoking her right to counsel. *Id.* Cosby does not claim that she requested to speak with the attorney again, or indicated that she was not comfortable with the interrogation proceeding without counsel present. Therefore, there is not a reasonable probability that a motion to suppress on this ground would have succeeded.

Additionally, Cosby's trial counsel considered the 9:00 a.m. statement helpful to the defense because it corroborated Cosby's claim that she thought Bobbie was dead when she assisted in bagging and binding her. Thus, electing not to suppress the statement did not constitute deficient performance, but sound trial strategy. *Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential . . . . [T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (internal quotation omitted)).

Cosby's claim also fails the second part of the *Strickland* test because she cannot demonstrate that her counsel's decision not to suppress the statement prejudiced her. Cosby testified at trial, confirming almost all of the facts admitted through her 9:00 a.m. statement, except for insisting that Kmuel placed the bag over his mother's head. In her brief, Cosby argues that she would not have testified if her statement had been suppressed, and that the failure to suppress therefore prejudiced her. Cosby further argues that the state bears the burden of showing that

her testimony was not compelled by the admission of the statement, citing *Harrison v. United States*, 392 U.S. 219, 224-25 (1968). In *Harrison*, the defendant testified after his illegally obtained confession was admitted into evidence. As discussed above, Cosby's 9:00 a.m. statement was not taken in violation of her right to remain silent or her right to counsel. Since her statement was not illegally obtained, and therefore not improperly admitted, the state bears no such burden. Furthermore, Cosby's claim that she would not have testified is not supported by the record. The only statement in Cosby's affidavit relating to her decision to testify states, "[o]n the day I testified, [trial counsel] spent about 15 minutes with me . . . reviewing what I would say, and at the same time deciding whether I should testify at all." This is insufficient to demonstrate that Cosby felt compelled to testify because her statement was admitted into evidence. Thus, Cosby cannot show that she was compelled to testify, and therefore prejudiced, by the failure of her counsel to move for suppression. Finally, Cosby's defense was a mistake-of-fact: she thought the victim was already dead when she became involved. She has maintained this defense in her habeas corpus petition before the district court, as she argued for her actual innocence. Since the statement corroborated this mistake-of-fact defense, it is not evident that she was compelled to testify because of the statement. Therefore, Cosby has failed to demonstrate that she was prejudiced by the failure to suppress the statement.

Cosby also argues that her counsel's choice of the mistake-of-fact defense, and hence the decision not to suppress the statement, was deficient because it rested on inadequate investigation of the medical evidence. Cosby claims that her counsel was surprised by the medical examiner's testimony that the victim was alive when she was bagged and bound. Since she was alive, Cosby argues, this undermined the

viability of a mistake-of-fact defense. The district court separately addressed the issue of trial strategy and denied a certificate of appealability on the issue of whether "trial counsel should have reassessed his trial strategy after the medical examiner testified that Bobbie was alive when Cosby put the plastic bag over Bobbie's head." The district court reasoned that Cosby's "attack on her lawyer's trial strategy does not present a substantial constitutional question because the state court's resolution of this is a correct and reasonable application of *Strickland*." Again, we construe the briefing of this issue as a request "to amend a certificate [of appealability] to include additional issues." *Ouska*, 246 F.3d at 1045. We agree with the district court that this issue does not present a substantial constitutional question. 28 U.S.C. § 2253(c)(2). Cosby fails to show that there is a substantial constitutional question arising from her counsel's allegedly inadequate investigation. In particular, Cosby fails to show that this omission affected the outcome of the trial. We therefore decline to issue a certificate of appealability on this issue.

### III.

The Appellate Court of Illinois's denial of Cosby's ineffective assistance of counsel claim based on the failure to suppress her custodial statement that was admitted at trial was not contrary to or an unreasonable application of Supreme Court precedent. Accordingly, we AFFIRM the judgment of the district court.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*