In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-3679

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ALLEN YOUNG,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-cr-82 — **Edmond E. Chang**, *Judge.*

ARGUED FEBRUARY 26, 2020 — DECIDED APRIL 7, 2020

Before WOOD, *Chief Judge*, and ROVNER and BARRETT, *Circuit Judges*.

BARRETT, *Circuit Judge.* Allen Young was indicted for the sex trafficking of four minors and the attempted sex trafficking of a fifth. Three weeks before his trial was scheduled to start, Young fired his attorney and invoked his right to represent himself. The result was predictable. The government presented compelling evidence—including the testimony of each victim—that Young knowingly facilitated the prostitution of

vulnerable minors and profited from their exploitation. Young, appearing pro se, failed to mount a serious defense to the government's case, and the jury convicted him on all counts. He now appeals eight issues from the trial. None of his arguments has merit, and we affirm the judgment across the board.

I.

Between 2014 and 2016, Allen Young promoted the prostitution of high-school-aged minors and took a cut of the money that they were paid for sex. He was indicted under 18 U.S.C. § 1591 for sex trafficking four minor victims—Jyanna, Kiwana, Jackie, and Destiny—and attempting to do the same with a fifth—Alexus. Young followed the same general pattern with each victim. After meeting the victims, Young showed them the classified ads website Backpage.com and taught them how to post advertisements for "escort services." Young sometimes took revealing photos of the victims for their ads and posted them himself from his own computer, paying the advertising fees out of pocket. Young then facilitated the victims' "calls," or appointments, with the men who responded to the Backpage ads. He set the hourly rates that his victims would charge for sex; he reserved the hotels where the sexual acts would take place; and he provided the victims with condoms to use during sex, as well as cell phones that they could use to contact him during their appointments. He provided housing for one victim, Kiwana, in his basement. Young also drove the victims to and from their calls, at least once picking up a victim from high school to take her to a call. Young usually took half of the money that his victims were

paid for sex. Sometimes he personally demanded sex from them—either in addition to or instead of the money.

A few weeks before Young's trial was set to begin, Young fired his counsel and elected to represent himself. At trial, the government presented substantial evidence of Young's guilt. It elicited testimony from each of the five victims, the FBI special agent who investigated the case, and a witness who had seen Young transport the victims. It introduced phone records showing extensive contact between Young's phone and the victims', which consistently matched the times and locations of their appointments. It put Young's former employer on the stand, who testified that he had fired Young after discovering that Young had used the workplace to photograph and advertise young women on Backpage. It introduced Young's personal notebook, which contained the email address that he had used to post at least one of the victims' Backpage ads and tips on how to avoid getting caught by the police as an escort. And it furnished the jury with Young's post-arrest statement, during which he admitted that he knew about Backpage and that he knew Jyanna and knew that she was a minor.

Young testified in his own defense, questioned by his standby counsel. On the stand, Young admitted that he had been trying to start an adult escort business, that he knew some of the victims, and that he helped them by giving them rides. He denied facilitating their prostitution and posting their ads on Backpage, and he said that he did not know that they were all minors.

The jury convicted Young on all counts, and the court sentenced him to 21 years' imprisonment. Now represented by counsel, Young appeals eight issues from trial.

## II.

Young first argues that he never stood a chance at trial because the district court did not give him adequate time to prepare. The court denied the motion for a continuance that Young filed on May 3, 2018, eleven days before trial was set to begin.

Young's May 3 motion for a continuance was not his first. The court had originally scheduled the trial to begin on January 22, 2018. Still represented by counsel at the time, Young moved in January 2018 for a continuance to respond to a government request to narrow the indictment and to address new facts that the government had recently learned and disclosed. The court granted that continuance and reset the trial for February 20, 2018. In February, Young moved for a second continuance because his counsel had a family medical issue. The court granted that motion and rescheduled the trial for May 14, 2018. In early April, the grand jury returned a narrowed superseding indictment. Two weeks later, Young elected to waive his right to counsel. The district court thoroughly advised Young about the consequences of invoking his right to self-representation under *Faretta v. California*, 422 U.S. 806, 835 (1975). The court explained that proceeding pro se could restrict Young's ability to conduct research and to prepare for the trial. Young waived his right to counsel anyway. On May 3, he orally moved for a third continuance to help prepare for the trial. The district court denied the motion and proceeded with the May 14 schedule.

A district court has great discretion in scheduling trials and may adhere to a trial date unless there are strong reasons to grant a continuance. *United States v. Cosby*, 924 F.3d 329, 334

(7th Cir. 2019). To determine whether such strong reasons exist, a district court must consider several factors, including the amount of time available for preparation, the risk of prejudice from denying the continuance, the defendant's role in shortening the effective preparation time, the complexity of the case, the availability of discovery from the prosecution, the likelihood that a continuance would have helped the defendant, and the inconvenience to the district court. *United States v. Schwensow*, 151 F.3d 650, 656 (7th Cir. 1998). We will reverse the district court's denial of a motion for a continuance only for abuse of discretion and upon a showing of actual prejudice. *Id.*

Reviewing the relevant factors, we conclude that the court did not abuse its discretion in denying the third motion for a continuance. Young has failed to explain what he would have done differently with the benefit of more time. He had 15 months from the initial indictment to trial to prepare; for most of that time, he had the help of a lawyer, and after he took over his own defense, he had almost three weeks to get up to speed. *Id.* (affirming the district court's denial of a continuance where the defendant had months with counsel to prepare for trial before electing to proceed pro se). His desire for more time arose from his own knowing and voluntary choice to proceed pro se—a change that he initiated three weeks before a trial date that had already been pushed back twice. *Cf. United States v. Volpentesta*, 727 F.3d 666, 678 (7th Cir. 2013) ("We are particularly reluctant to find an abuse of discretion where, as in this case, a court denies a continuance to a defendant who decides to proceed *pro se* but then complains of not being prepared for trial."). Further, Young did not lack access to the prosecution's discovery: in detention, he was allowed to review all of the prosecution's materials except for

certain phone records, which he was later permitted to access. As for the complexity of Young's case, the trial transcript reveals that Young had a fairly strong grasp of the relevant facts. Young may have lacked a sophisticated understanding of the law, but he has not explained why that was the result of the timeline rather than his choice to proceed pro se.

When Young elected to represent himself, he was warned that one of the consequences would be the difficulty of preparing for trial. A defendant has a right to self-representation, but "[d]efending *pro se* will almost always be foolish …." *Imani v. Pollard*, 826 F.3d 939, 944 (7th Cir. 2016). Young proceeded pro se anyway, and he now faces the consequences. The court did not abuse its discretion when it denied a third continuance.

## III.

Young also argues that the district court erroneously instructed the jury on the interstate commerce element of the offense. Young was indicted under 18 U.S.C. § 1591, which requires that the offense occur "in or affecting interstate commerce." The district court instructed the jury that this element would be satisfied if the defendant did or knowingly caused another to do one or more of the following actions as part of in or in furtherance of the offense: "(1) used hotels that serve interstate travelers; or (2) used condoms manufactured outside of the State of Illinois; or (3) used the Internet to place advertisements." Young asserts that these connections to interstate commerce are too flimsy to support a conviction.

We reject Young's narrow theory. The statute sweeps broadly: again, the defendant's actions need only be "in or affecting" interstate commerce. The Seventh Circuit's pattern

jury instructions clarify that commerce "includes, among other things, travel, trade, transportation and communication." PATTERN CRIMINAL JURY INSTRUCTIONS OF THE SEVENTH CIRCUIT 470 (2012 ed., rev. 2019). An advertisement for sex placed on the internet is plainly a communication delivered through an interstate infrastructure. *See United States v. Horne*, 474 F.3d 1004, 1006 (7th Cir. 2007) (explaining that a website "is an avenue of interstate commerce" and that the internet "crosses state and indeed international boundaries"). Hotels catering to interstate travelers have a close connection to interstate travel. *Cf. Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 248 (1964) (holding that the local operations of a motel affect interstate commerce). And condoms manufactured out of state affect interstate trade. *See United States v. Evans*, 476 F.3d 1176, 1179–80 (11th Cir. 2007) (explaining that condoms, along with hotels, affect interstate commerce); *see also United States v. Walls*, 784 F.3d 543, 548–49 (9th Cir. 2015) (holding that because Congress found that sex trafficking has a substantial effect on interstate commerce in the aggregate, each individual action need only have a de minimis effect on interstate commerce).

The jury instructions thus comported with the broad language of § 1591. Other circuits have taken the same approach to the interstate commerce element in this very statute. *See, e.g., United States v. Phea*, 755 F.3d 255, 263 (5th Cir. 2014) (element satisfied by use of cell phone, out-of-state customer, and online ads); *United States v. Todd*, 627 F.3d 329, 331–33 (9th Cir. 2010) (Craigslist and newspaper ads); *Evans*, 476 F.3d at 1179–80 (condoms and hotels). And we have interpreted the interstate commerce element of the Hobbs Act, another statute with a broadly defined interstate commerce element, in a

similarly expansive way. *See Horne*, 474 F.3d at 1006; *United States v. Stillo*, 57 F.3d 553, 558–59 (7th Cir. 1995).

Young next argues that even if the court properly instructed the jury on the interstate commerce element, the evidence presented at trial was insufficient to prove that element. Young moved for a directed verdict on this basis at the district court and now argues that it warrants a reversal of his conviction. We will overturn a conviction based on insufficiency of the evidence only if the record is "devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Durham*, 645 F.3d 883, 892 (7th Cir. 2011).

Young has a compelling argument with respect to two of the three grounds on which the jury could have found the "interstate commerce" element satisfied: hotels and condoms. The government presented little to no credible evidence of the interstate nature of the hotels that Young used or that the condoms that he provided to the victims were manufactured out of state. That was unfortunate. Such information is no doubt readily available, and the government could have averted litigation on this issue by presenting it.

Fortunately for the government, it had enough evidence of the third ground—internet advertising—to prove the interstate commerce element for each count of conviction. The court instructed the jury that they could find that the government proved the interstate commerce element if Young used or caused someone else to use the internet to place advertisements "as part of or in furtherance of the offense." Jyanna, Kiwana, Destiny, and Jackie all testified at trial that Young used Backpage to advertise their escort services. They explained

that sometimes Young posted their advertisements on Backpage himself and sometimes he took photos for the website and instructed one of the victims to post them on his behalf. They further testified that Young sometimes paid money to Backpage to promote their ads on the website. Their testimony was supported by examples of the advertisements, which were linked to Young's phone number, email address, and IP address. That evidence is sufficient for a reasonable jury to find that Young used the internet in furtherance of his offenses against all four victims of sex trafficking.

With respect to Alexus, the victim of attempted sex trafficking, the evidence was slightly weaker. Jyanna testified that Young had posted an advertisement on Backpage for escort services, but not for Alexus directly. Two men responded to the Backpage ad, requesting two escorts. Jyanna persuaded her friend Alexus to be the second, and Young picked up both Jyanna and Alexus to take them to the call.

Even though Young did not advertise Alexus by name or by photograph, Jyanna's testimony supports the jury's finding on the "interstate commerce" element with respect to Alexus. Young's Backpage advertisement attracted customers seeking two escorts, and he used Alexus to fulfill their request. Based on that evidence, a reasonable jury could conclude that Young used the internet "as part of or in furtherance of" his attempt to provide Alexus for sex. The record therefore was not "devoid" of proof that Young acted in interstate commerce with respect to every offense for which the jury convicted him.

IV.

Young challenges the district court's decision to exclude evidence of his minor victims' past sexual conduct. Before trial, Young moved to introduce evidence that Jyanna, Kiwana, and Alexus had been engaged as prostitutes "on their own" before they ever met him. The district court denied Young's motion under Federal Rule of Evidence 412. We review the exclusion for abuse of discretion. *United States v. Groce*, 891 F.3d 260, 266 (7th Cir. 2018).

Evidence offered to prove that a victim engaged in other sexual behavior is generally inadmissible in proceedings involving allegations of sexual misconduct. FED. R. EVID. 412(a)(1). The rule serves two purposes: it is meant to protect victims against "the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details" and to encourage victims to participate in legal proceedings without fear of those consequences. FED. R. EVID. 412 advisory committee's note to 1994 amendments. But the general rule has a few narrow textual exceptions, and Young argues that his proposed evidence falls under one of them. A court may admit sexual-history evidence in a criminal case if excluding the evidence would violate the defendant's constitutional rights. FED. R. EVID. 412(b)(1)(C). Young argues that the exclusion violated his Sixth Amendment right to prove his defense. The federal sex-trafficking statute makes it a crime to knowingly or with reckless disregard recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, or solicit a minor to engage in a commercial sex act. 18 U.S.C. § 1591. Young posits that the evidence would tend to show that he lacked the mens

rea to knowingly or with reckless disregard "coerce," "recruit," or "harbor" the victims because he believed from their prior sexual acts that they were "acting of their own volition."

The district court properly rejected this argument. Disproving that he knowingly "coerced" his victims would not have helped Young because coercion is not an element of the federal crime of sex trafficking when the victim is a minor. *Id.* § 1591(a), (c). Nor would it have helped Young to disprove that he knowingly "recruited" the victims to prostitution. Although recruitment is one possible means of completing the federal crime of sex trafficking, Young was not indicted for recruitment. Finally, the prior sexual conduct of Young's minor victims has no bearing whatsoever on whether Young knowingly "harbored" any of them for prostitution—that is, whether he knowingly provided his victims with a place to live. Nor, for that matter, could Young argue that his victims' prior sexual acts bore on whether he "transported," "provided," "obtained," or "maintained" them—the other charges in his indictment. *See Groce*, 891 F.3d at 266–67 (rejecting evidence of prior prostitution as irrelevant to the present charges); *United States v. Carson*, 870 F.3d 584, 593–94 (7th Cir. 2017) (same); *United States v. Cephus*, 684 F.3d 703, 708 (7th Cir. 2012) (same). The district court did not infringe on Young's constitutional rights by denying him the opportunity to present evidence of his minor victims' sexual history.

## V.

Young next argues that his personal notebook should have been excluded from evidence as the fruit of an illegal search. He contends that the person who consented to the search did not have the apparent authority to do so. *See Illinois v. Rodriguez*, 497 U.S. 177, 188–89 (1990).

Whatever the merits of Young's Fourth Amendment argument, he made it too late. A party moving to suppress evidence must do so before trial; the court may consider an untimely motion only if the moving party shows good cause. FED. R. CRIM. P. 12(b)(3)(C); 12(c)(3). Young did not file a pretrial suppression motion; instead, he moved to suppress the notebook during the trial after the prosecution introduced the evidence. Young asserts that his election to proceed pro se during the weeks before trial amounted to good cause for his untimeliness. But Young discussed this issue with his attorney months before his decision to proceed pro se, and he was able to file several other pretrial motions after he fired his counsel. The district court's conclusion that Young failed to demonstrate good cause for his untimeliness was not an abuse of discretion.

## VI.

Young presents a spate of other arguments, all of which we reject. Young contends that the district court erroneously instructed the jury on the definition of "reckless disregard." But the court's instruction comported with our definition of the term in *Carson*, 870 F.3d at 601. Young also challenges the admission of testimony by government's expert FBI Special Agent Carrie Landau. The district court did not abuse its discretion by concluding that Landau's expert testimony, which defined key terms and explained common sex-trafficking dynamics, was reliable and helpful for the jury. *See* FED. R. EVID. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Young's motion for a new trial on the basis of supposed perjury by two government witnesses, Special Agent Dana McNeal and victim Destiny, fares no better. The district court did not abuse its discretion when it concluded that

McNeal had not perjured herself but rather had failed to understand Young's convoluted cross-examination. As to Destiny's testimony, Young never raised the argument below. It was not plain error to deny Young's motion for a retrial notwithstanding inconsistencies in Destiny's testimony on a minor issue collateral to Young's guilt. Finally, because Young has failed to point to any errors at all in his trial, he has necessarily failed to demonstrate that his trial was tainted by cumulative error.

* * *

Young has pointed to no reversible error. On the contrary, the record reveals that the district court ably presided over the many challenges of this particular trial. The court's judgment is AFFIRMED.