In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 23-1960

XINGJIAN SUN, et al.,

*Plaintiffs-Appellants*,

*v.*

GARY GANG XU,

*Defendant-Appellee*.

———————————

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:19-cv-02242 — **Eric I. Long**, *Magistrate Judge*.

———————————

ARGUED FEBRUARY 7, 2024 — DECIDED APRIL 25, 2024

———————————

Before WOOD, LEE, and PRYOR, *Circuit Judges*.

LEE, *Circuit Judge*. Appellants Xingjian Sun and Xing Zhao accused their professor, Appellee Gary Gang Xu, of sexually and emotionally abusing them while the two were students at the University of Illinois at Urbana-Champaign (UIUC). Sun and Zhao brought these allegations to UIUC administrators, and Sun later publicized them during an interview on a nationally televised morning news show. Meanwhile, Appellant Ao Wang, a professor at Wesleyan University, learned of these

allegations and posted on an online message board that Xu had a history of sexually assaulting students, to which Xu responded by posting negative comments about Wang and by allegedly sending a letter to his employer.

Sun, Zhao, and Wang eventually sued Xu: Sun and Zhao claimed that Xu had sexually assaulted them and others, and Wang claimed that Xu had wrongfully retaliated against him for his internet posts. Relevant to this appeal, Xu counterclaimed, asserting a defamation claim against Sun and claims for intentional infliction of emotional distress against Sun, Zhao, and Wang. After a trial, a jury found in favor of Xu on all issues and awarded him damages against Sun and Wang. Now, on appeal, Sun and Wang argue that the district court erred in denying their motion for judgment as a matter of law as to Xu's intentional infliction of emotional distress counterclaims. Appellants also contend that the district court erred in denying their motion for a new trial, which they believe is necessary based on the court's decision to admit evidence that Sun had a relationship with another professor. For the following reasons, we reverse the judgment in favor of Xu on his counterclaim against Wang. In all other respects, the judgment below is affirmed.

## I.    Background

While a graduate student at UIUC in 2013, Sun asked Xu, then a professor in the Department of East Asian Language and Culture, to advise her project on Chinese film. Over time, Sun alleges, she and Xu engaged in a sexual relationship, a claim Xu has repeatedly denied. According to Sun, the relationship turned violent and non-consensual. Indeed, Sun claims Xu violently raped her, publicly chased her in a car, and attempted to kill her. Sun told the police and UIUC

administrators about the relationship, and the University launched multiple investigations into Xu's conduct. Sun would later write an email to UIUC recanting her allegations against Xu and admitting she had fabricated the stories.

Zhao was a graduate student at UIUC and assisted Xu with a book he was writing. Zhao alleged that Xu attempted to kiss and grab her at an art exhibit. Zhao reported these allegations, along with concerns about Xu's relationship with Sun, to UIUC. Xu denies he ever assaulted Zhao.

Wang is a professor at Wesleyan University in Middletown, Connecticut. Wang and Xu had only met once, but Wang saw social media posts accusing Xu of rape, sexual assault, and predatory behavior. On March 10, 2018, Wang wrote a post on douban.com, an online message board, stating that Xu had committed "numerous misdeeds." Wang claimed that Xu had "sexually assaulted students for nearly 20 years, and finally had to resign and work in another university." Wang also wrote,

> The information I have is that Gang Xu had improper relationships with many students, so that the university did not schedule classes for him, hoping that he would leave by himself. Frankly speaking, such a notorious person should be excluded from the education sector. If he chooses to work in a university in the Chinese mainland, students who are not aware of his misdeeds may become victims. So I give a warning here.

According to Wang, his "core purpose" in making the post was to "[g]ive a warning to prevent people from becoming

next victims [sic] and exclude the misbehaving persons like Gary Gang Xu from the education sector." To that end, Wang encouraged students to "inform each other" of Xu's misdeeds, if universities did not punish Xu appropriately. Mere hours after Wang posted on douban.com, Xu responded to Wang via email, denying the claims and threatening legal action. A week later, Wang republished his comments on a different message board, zhihu.com. These posts apparently received over one million views.

In 2019, Sun, Zhao, and Wang filed a ten-count complaint against Xu, claiming he had abused and raped multiple students, forced Sun and Zhao into unpaid labor, and improperly retaliated against Wang for publicizing the allegations. The suit garnered much media attention, and Sun appeared on *CBS This Morning*, a nationally broadcast morning news show, to publicize her allegations. In her interview, Sun claimed that Xu had tried to run her over with a car and had subjected her to physical, sexual, and emotional abuse, including numerous instances of rape. The broadcast also included an image of Sun with a blackened eye purportedly caused by Xu.

In his answer to the complaint, Xu denied all of the claims and brought counterclaims accusing Sun of defamation and Sun, Zhao, and Wang of intentional infliction of emotional distress. After discovery, the parties filed cross-motions for summary judgment, and the district court allowed several of Appellants' claims, as well as Xu's counterclaims, to proceed to trial.

The trial took three days, and the jury returned a verdict against Sun, Zhao, and Wang on their claims against Xu. As for Xu's counterclaims, the jury found in favor of Xu and

awarded him $100,000 in compensatory damages against Sun and $700,000 in compensatory and punitive damages against Wang.

At the conclusion of trial, Appellants asked the court to enter judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) or, alternatively, for a new trial pursuant to Federal Rule of Civil Procedure 59. Relevant to this appeal, Wang and Sun argued that no reasonable jury could find their conduct met the standard for intentional infliction of emotional distress under Illinois law. Appellants also asserted that a new trial was warranted because the district court's decision to admit testimony regarding Sun's relationship with another professor was unduly prejudicial in violation of Federal Rule of Evidence 412. The district court denied these motions, and Appellants now appeal.

## II.    Discussion

We review the district court's denial of judgment as a matter of law *de novo*, viewing all facts and making all reasonable inferences in the light most favorable to the non-moving party. *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997). We review the district court's denial of a request for a new trial and the district court's decision to allow testimony under a highly deferential abuse of discretion standard. *United States v. Young*, 955 F.3d 608, 614 (7th Cir. 2020).

### A.  Motion for Judgment as a Matter of Law

Appellants Sun and Wang argue that the trial record does not support the jury's verdict on Xu's intentional infliction of emotional distress claims. A court may enter judgment as a matter of law under Federal Rule of Civil Procedure 50(b) if a party has been "fully heard on an issue during a jury trial and

the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(b). As such, we reverse only if no reasonable juror could have found on the trial record that Xu established all the elements of the claim. *See Van Stan*, 125 F.3d at 567. In conducting this analysis, we view all evidence in the light most favorable to Xu, the non-moving party, and draw all reasonable inferences in his favor. *Mangren Rsch. & Dev. Corp. v. Nat'l Chem. Co.*, 87 F.3d 937, 941 (7th Cir. 1996).

To prevail on an intentional infliction of emotional distress claim under Illinois law, a claimant must prove three elements. *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 63 (Ill. 2016). First, the conduct in question was truly extreme and outrageous. *Id.* Second, the actor intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would have caused such distress. *Id.* Third, the conduct in fact caused severe emotional distress. *Id.*

The tort "does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Liability is found only when "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

### 1.  Claim Against Wang

Wang contends that no reasonable jury could find on this record that his conduct was extreme and outrageous under Illinois law. We agree.

The Illinois Supreme Court has identified three non-exclusive factors that inform whether conduct is extreme and outrageous. *McGrath*, 533 N.E.2d at 809–10. First, the extreme and outrageous nature of the conduct may arise from defendant's "abuse of some position that gives him authority over the plaintiff or the power to affect the plaintiff's interests." *Schweihs*, 77 N.E.3d at 63. Second, courts consider the reasonableness of a defendant's belief that his objective is legitimate. *McGrath*, 533 N.E.2d at 811. Third, courts evaluate whether the defendant is aware that the plaintiff is particularly susceptible to emotional distress. *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992). These factors are "to be considered in light of all of the facts and circumstances in a particular case, and the presence or absence of any of these factors is not necessarily critical to a cause of action for intentional infliction of emotional distress." *Schweihs*, 77 N.E.3d at 63. The outrageousness of the conduct "must be determined in view of all the facts and circumstances pled and proved in a particular case." *Id.*

No reasonable jury could find on this record that Wang's conduct exhibited any of these factors. Wang did not abuse a position of power over Xu, as both parties admit they barely knew each other. Nor is there any indication that Wang knew that Xu was particularly susceptible to emotional distress. The only debatable point is whether Wang reasonably believed that his objective was legitimate. In this regard, Illinois courts give greater latitude to defendants who "pursu[e] a reasonable objective even if that pursuit results in some amount of distress for a plaintiff." *Honaker v. Smith*, 256 F.3d 477, 491 (7th Cir. 2001). Actors cannot, however, pursue that legitimate purpose in an extreme or outrageous manner. *See McGrath*, 533 N.E.2d at 810 ("Although the reasonable belief that his

objective is legitimate does not provide a defendant *carte blanche* to pursue that objective by outrageous means, it is a substantial factor in evaluating the outrageousness of his conduct.") (internal citations omitted).

Here, Wang consistently claimed that his objective in posting the comments was to prevent other students from being victims of Xu's behavior. He wrote this in his online posts and repeated it at trial, stating his intention was to "do the right thing, which is to protect women, especially female students." While Wang never raised these allegations with Xu, he testified that he believed the assertions and had heard of multiple instances of Xu's sexual misconduct. By contrast, Xu presented no evidence at trial to contradict the veracity of Wang's intentions. Wang's posting of his genuinely held belief in Xu's alleged misconduct for the purpose of warning other students does not rise to the level of extreme and outrageous conduct under Illinois law. *See, e.g.*, *Kiebala v. Boris*, No. 1:16 CV 7478, 2017 WL 4339947, at *6 (N.D. Ill. Sept. 29, 2017), aff'd, 928 F.3d 680 (7th Cir. 2019) ("[W]e cannot conclude Boris' negative and allegedly defamatory online reviews of Kiebala's business practices could plausibly be considered so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community, particularly where Boris did not stand in a position of power over Kiebala.") (internal citation omitted).

Relying on *Dawson v. New York Life Insurance Co.*, 932 F. Supp. 1509 (N.D. Ill. 1996), the district court concluded that the jury, not the court, should decide if Wang's conduct was extreme and outrageous. But *Dawson* is not helpful. There, the defendant insurance company disputed whether and how its employees disseminated the allegedly defamatory materials

at issue. The court found that these disputes constituted Dawson's "theory of the case" and must be proved at trial to support a claim of intentional infliction of emotional distress. *Id.* at 1546. By contrast, here, there was no dispute about the content and manner of Wang's posts. As noted above, Xu offered no evidence at trial to contradict Wang's assertions that he was trying to help women or to show Wang did not believe his statements to be true. Unlike in *Dawson*, there was no conflicting evidence for the jury to weigh. Thus, we conclude that the district court erred in denying Wang's motion for judgment as a matter of law.

### 2. Claim Against Sun

Unlike the claim against Wang, there is sufficient evidence in the record for a reasonable juror to find that Sun's conduct met the requirements for intentional infliction of emotional distress. On appeal, Sun contends that her conduct was not extreme and outrageous and that she did not cause Xu to suffer any severe emotional distress. We address these arguments in turn.

As with Wang, the pivotal issue is whether Sun reasonably believed that her objective in publicizing her allegations against Xu was legitimate. We tread carefully here, because we are mindful that overcorrection may chill good faith claims of sexual harassment and assault. In such circumstances, when an individual in fact believes that they were the victim of sexual harassment or sexual assault and publicizes this belief in order to obtain accountability and redress, a claim for intentional infliction of emotional distress would be baseless. But the circumstances here are very different. As we shall see, whether Sun actually believed that Xu had sexually assaulted her at the time she made those accusations public

was hotly contested at trial. And so, we take our evaluation of Sun's intent in two steps. We first consider whether Xu presented sufficient evidence at trial for a reasonable juror to find that Sun was fabricating her claims. Second, if Xu did present such evidence, we ask whether Sun's knowingly false allegations of rape are sufficiently extreme and outrageous to support an intentional infliction of emotional distress claim under Illinois law.

Based on the trial record, we conclude that a reasonable jury could find that Sun was lying about the nature of her relationship with Xu when she made her accusations against him public. For example, the jury heard the testimony of Kaamilyah Abdullah-Span, an administrator in the Office of Diversity, Equity, and Access at UIUC. She testified that even though Sun initially had reported that she had had a sexual relationship with Xu, Sun "withdrew her allegations on multiple occasions." The jury also read Sun's emails retracting her claims and her written statement that she had "made up the stories about sexual abuse." Furthermore, the jury observed Sun give her account at trial and watched Xu as he testified that he had never had sex with Sun and that he was the one who had rejected her advances. On the other hand, there was evidence at trial that would lend some support to Sun's statements, such as Sun's video deposition testimony, her initial complaints to UIUC administrators, and photos of her and Xu together. But we jealously guard the jury's province to weigh conflicting evidence, evaluate witness credibility, and determine the facts. This is why, when reviewing a district court's ruling on a motion for judgment as a matter of law, we "disregard all evidence favorable to the moving party that the jury was not required to believe." *Hossack v. Floor Covering Assocs. of Joliet, Inc.*, 492 F.3d 853, 859 (7th Cir. 2007). Here, the jury

was best positioned to consider the totality of the evidence at trial and determine whether it was Sun or Xu who was telling the truth.

Because there was sufficient evidence at trial from which a reasonable jury could find that Sun had fabricated her statements about Xu, we now ask whether such actions constitute extreme and outrageous conduct under Illinois law. We conclude that they do. Intentional dissemination of false allegations of rape on a nationally televised program is the type of conduct that would lead a reasonable person to "hear the facts and be compelled to feelings of resentment and outrage." *Duffy v. Orlan Brook Condo. Owners' Ass'n*, 981 N.E.2d 1069, 1079 (Ill. App. Ct. 1st Dist. 2012).

The Illinois Supreme Court's decision in *Kolegas* is instructive. 607 N.E.2d at 213. There, a local disc jockey stated on-air that a caller's wife and son—both of whom suffered from neurofibromatosis (commonly known as Elephant Man disease)—had deformed heads and that no one would want to marry the wife except out of duress. *Id.* at 212. While such statements expressed privately might constitute mere insults, the court noted, the disc jockey's derogatory remarks were extreme and outrageous "by virtue of its publication to the community at large." *Id.* In comparison, Sun's conduct here was more extreme and outrageous. She broadcasted her allegations of rape (which the jury found to be false) to a national audience and made accusations that could—and did—jeopardize Xu's career and reputation.

In response, Sun contends that false accusations of rape can never support a claim of intentional infliction of emotional distress. But the cases she cites are inapposite. They involve claims of intentional infliction of emotional distress

brought by alleged abusers against their educational institutions for the way the schools handled sexual assault claims. *See Doe v. Trs. of Univ. of Pa.*, 270 F. Supp. 3d 799, 827 (E.D. Pa. 2017) (dismissing student's claim based on the University's mishandling of a sexual assault allegation against him); *Doe v. Columbia Coll. Chi.*, 299 F. Supp. 3d 939, 963 (N.D. Ill. 2017) (dismissing a male student's claim where the University Hearing Panel found he sexually assaulted a female student); *Fellheimer v. Middlebury Coll.*, 869 F. Supp. 238, 247 (D. Vt. 1994) (dismissing a male student's claim against the college for confronting him about a female student's allegation of rape). The facts here are markedly different. Here, as the jury found, Sun fabricated claims of sexual assault and rape and knowingly publicized them to university administrators and the world. Under Illinois law, such intentional conduct is extreme and outrageous.

Next, Sun argues that the record lacks any evidence that her actions caused Xu to suffer severe emotional distress. Under Illinois law, emotional distress can include "all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 84 (Ill. 2003) (citing Restatement (Second) of Torts § 46 cmt. j (1965)). But just experiencing these emotions is not enough; the law only intervenes when "the distress inflicted is so severe that no reasonable man could be expected to endure it." *Pub. Fin. v. Davis*, 360 N.E.2d 765, 767 (citing Restatement (Second) of Torts at § 46 cmt. j (1965)). Moreover, in determining the severity of the distress, Illinois courts consider the "intensity and duration" of that distress. *Id.*

At trial, Xu testified that Sun's comments on *CBS This Morning* caused him to lose "everything." The interview also was uploaded to YouTube and the public website of Sun's counsel. Xu said that this caused "an incredible amount of pressure and nightmare [sic] and explanation to, to my family." Xu further stated that he felt sick due to the accusations and experienced tremendous nervousness and anxiety. He also testified that he had nightmares and was "waking up in the middle of the night, thinking of all the accusations, thinking of what life could have been without all this." As he feared, Xu was fired from his job and was unable to find other employment in the United States or China.

A reasonable juror could find that this combination of symptoms constitutes severe emotional distress as defined by Illinois law. Xu claimed that he was both financially and reputationally ruined by Sun's allegations. This harm exceeds the distress the Illinois Supreme Court found sufficient in *Kolegas*, where Kolegas claimed that the disc jockey's offensive comments caused him to be "greatly injured in his reputation and business" and that "the attendance receipts earned from [a related charity festival] were greatly diminished." 607 N.E.2d at 206.

Sun also contends that Illinois law requires a third party to corroborate the emotional distress Xu experienced. But Illinois law does not require outside confirmation of claims of emotional distress. *See Bristow v. Drake St. Inc.*, 41 F.3d 345, 350 (7th Cir. 1994) (noting that neither consultation with a psychiatrist nor medical evidence is required to show distress under Illinois law). Sun and Wang cite *Biggs v. Dupo* for the proposition that "when the injured party provides the sole evidence, he must reasonably and sufficiently explain the circumstances

of his injury and not resort to mere conclusory statements." 892 F.2d 1298, 1304 (7th Cir. 1990). But Xu did just that. He recounted for the jury the many ways that Sun's statements harmed his life and emotional state. For example, he described how Sun's interview ruined his personal and professional reputation and career, as well as the nightmares, sleepless nights, anxiety, and stress he experienced as a result. This is sufficient to demonstrate harm under Illinois law. *See, e.g.*, *Amato v. Greenquist*, 679 N.E.2d 446, 455 (Ill. App. Ct. 1997) (finding depression, despair, insomnia, anxiety, nervousness, and emotional trauma sufficient without validation from a medical professional).

Finally, Sun argues that Xu's intentional infliction of emotional distress claim cannot stand because her comments were a matter of public concern and protected by the First Amendment. But this is a new argument made for the first time on appeal. Before the district court, Sun merely argued that it would be "against public policy" to allow an intentional infliction of emotional distress action for publicizing sexual assault. Now, she contends that *Snyder v. Phelps*, 562 U.S. 443 (2011), forecloses the claim because Xu's alleged abuse was a matter of public concern. This argument on appeal is more than a "new twist" on the argument that Sun made to the district court. *See United States v. Billups*, 536 F.3d 574, 578 (7th Cir. 2008). While Sun is not limited to the "precise" arguments raised below, she made no mention of the First Amendment or *Snyder* in her briefs before the district court, and the argument is waived. *See Yee v. City of Escondido*, 503 U.S. 519, 534 (1992); *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012).

### B. Motion for New Trial

Appellants Sun, Wang, and Zhao also request a new trial on the grounds that the district court erred in admitting testimony regarding Sun's relationship with another professor, thereby unduly prejudicing the jury's perception of her. We review a district court's decision to exclude evidence under the highly deferential abuse-of-discretion standard. *Young*, 955 F.3d at 614. This is because the district judge has "first-hand exposure to the witnesses and the evidence as a whole," along with "familiarity with the case and ability to gauge the impact of the evidence in the context of the entire proceeding." *United States v. Groce*, 891 F.3d 260, 268 (7th Cir. 2018).

Evidence regarding a victim's past sexual behavior is generally prohibited under Federal Rule of Evidence 412. This rule serves two important purposes. First, it protects "victims against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details." *Young*, 955 F.3d at 614 (citing Rule 412 advisory committee's note to 1994 amendment). Second, it encourages "victims to participate in legal proceedings without fear of those consequences." *Id.* Rule 412, however, has two exceptions; the second is relevant here.

> In a civil case, the court may admit evidence offered to prove a victim's sexual behavior or sexual predisposition if its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party. The court may admit evidence of a victim's reputation only if the victim has placed it in controversy.

Fed. R. Evid. 412(b).

At trial, Sun offered Dr. Lynn Ponton as her damages expert. In the second of two expert reports, Dr. Ponton opined that Xu's sexual assault and rape of Sun caused Sun to suffer from severe emotional and psychological distress. On the way, Dr. Ponton acknowledged that Sun had a relationship with another professor after her relationship with Xu, but opined that, because that professor was nurturing, he could not have caused any of the emotional distress that Sun was experiencing, placing the fault squarely on Xu. Given this, Xu's counsel understandably wanted to cross-examine Dr. Ponton to ensure that she had excluded the other relationship as a cause of Sun's trauma.

Recognizing the dictates of Rule 412 and the need for Xu's counsel to test Dr. Ponton's testimony as to causation, the district court engaged in a lengthy colloquy with the attorneys and Dr. Ponton and allowed Xu's counsel to ask Dr. Ponton the following:

> Q. And then you further state in your report: "Following Professor Xu, Ms. Sun engaged in a relationship with [a former] professor who was even older than Professor Xu, but Ms. Sun described a very different relationship with him to [you]." Is that what you put in your report?
>
> A. That's what I put in my report.
>
> Q. All right, so—
>
> A. That's correct.
>
> Q. My question, then, is: What weight, if any, did you give to that disclosure in arriving at your

> opinions and conclusions with respect to Ms.
> Sun's problems today?

In response, Dr. Ponton briefly described the other relationship and noted that it was caring and kind.

The district court did not abuse its discretion in allowing this limited questioning of Dr. Ponton. The court carefully conducted the balancing required by Rule 412(b). It heard both parties on the issue and carefully considered the opposing arguments, even going so far as to modify the proposed questions (to just ask about a "relationship" as opposed to a "sexual affair") and admonished Dr. Ponton to answer only the question asked. Given that Sun's own expert opened the door, we cannot say that the district court abused its discretion in doing so. The court deftly narrowed the questioning to limit the prejudice it would have had on Sun, while allowing Xu the opportunity to test Dr. Ponton's testimony. We thus affirm the denial of Appellants' motion for a new trial.

### III.    Conclusion

For the forgoing reasons, we REVERSE the district court's denial of Wang's motion for judgment as a matter of law. We AFFIRM the district court's denial of Sun's motion for judgment as a matter of law and the denial of Appellants' motion for a new trial.